527 So.2d 1199 (1988)
Nonie LASSWELL, Plaintiff-Appellee,
v.
MATLACK, INC., Defendant-Appellant.
No. 87-589.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*1200 Cox, Cox & Townsley, Rex Townsley, William Cox, McHale, Bufkin & Dees, David Jones, Lake Charles, for plaintiff-appellee.
Camp, Carmouche, Barsh, Gray, Hoffman & Gill, Terry Thibodeaux, Lake Charles, Young & Burson, H. Kent Aguillard, Eunice, Robert Oliver, Baton Rouge, for defendant-appellant.
Before DOMENGEAUX, STOKER and KING, JJ.
STOKER, Judge.
This suit arises out of an automobile accident which occurred on Louisiana Highway 117 in Vernon Parish on April 23, 1985. The plaintiff, Nonie Lasswell, was a passenger in an automobile driven by Leare Michelle Royster which was traveling south on Highway 117. It was alleged that the Royster vehicle was forced to leave the highway because an 18-wheel tractor trailer belonging to defendant, Matlack, Inc., which was traveling north on Highway 117, crossed the center line of the highway to avoid a hole in the road. The truck was being driven at the time by a
*1201 Matlack employee, Azarie Meaux, Sr. The Royster vehicle left the southbound lane, traveled on the shoulder, then crossed both lanes of the highway and flipped over adjacent to the northbound lane.
The plaintiff filed suit for the damages which she sustained as a result of the accident. The plaintiff filed suit against Royster, Meaux, Matlack, Matlack's insurer, Continental Insurance Company, Royster's insurer, Protective Casualty Insurance Company, and the State of Louisiana, Department of Transportation and Development (DOTD). Royster and Protective filed a cross-claim for her damages against Meaux, Matlack, Continental and DOTD. Various other claims were filed by the parties which are not the subject of this appeal.
After trial on the merits of the claims against Meaux, Matlack, Continental, Protective and Royster, the jury returned a verdict in favor of plaintiff on her demands, in favor of Royster on her demands and in favor of Protective for property damage it paid to Royster for the loss of her vehicle. The jury found no liability on Royster's part and found Matlack 70% at fault and DOTD 30% at fault. Nonetheless, the case against DOTD was tried to and decided by the trial court, which found no liability on the part of DOTD. The jury awarded damages to plaintiff in the sum of $175,000 and to Royster in the sum of $23,500. The jury verdict was made the judgment of the trial court with the exception that no liability was assigned to DOTD and it was not cast in judgment.
The defendant, Matlack, has appealed the judgment of the trial court. DOTD answered the appeal seeking affirmance of the trial court's findings with respect to its liability. No other parties have appealed or answered the appeal. The errors assigned by Matlack in this appeal are:
1) that the findings of the trial court and the jury verdict are in conflict and must be resolved;
2) that the trial court erred in finding no liability on the part of DOTD;
3) that the jury erred in finding Matlack 70% at fault and in not finding Royster at fault; and,
4) that the jury awarded excessive damages to the plaintiff and Royster and failed to reduce plaintiff's damages for her failure to mitigate her damages.

STANDARD OF APPELLATE REVIEW IN THIS BIFURCATED TRIAL
Defendant, Matlack, contends that the conflicting findings of fact of the judge and jury are to be reconciled or harmonized by this court on review.
The trial of this case was correctly bifurcated pursuant to LSA-R.S. 13:5101 which prohibits trial by jury against the State. The jury found that DOTD was negligent and assigned the percentage of liability at 30%. The trial judge found that DOTD was not negligent. The trial court entered judgment in favor of DOTD notwithstanding the jury verdict.
We find no error in the action of the trial court and accordingly there is no need for this court to harmonize the conflicting findings. As a matter of law, the jury had no right or duty to adjudicate the fault of DOTD or assign any percentage of fault to it. Therefore, the jury's verdict had no weight as to the issue of DOTD's fault and there was no conflict between the findings of the jury and the trial judge. LSA-R.S. 13:5105; Dean v. Terrebonne Parish Police Jury, 510 So.2d 82 (La.App. 1st Cir. 1987); Bishop v. Shelter Insurance Co., 461 So.2d 1170 (La.App. 3d Cir.1985), writ denied, 465 So.2d 737 (La.1985).

FAULT OF DOTD AND MATLACK
Defendant Matlack maintains that the hole in the northbound lane of Highway 117 constitutes a defect which was the cause-in-fact of this accident. This argument inextricably involves the other issue presented in this appeal (the question of whether Matlack was at fault) because Meaux testified that he never crossed the center line, but if he did do so, it was because of the defective condition of the highway.
*1202 The trial judge, in his written reasons for judgment, summarized his findings on the evidence as follows:
"A claim was asserted herein against the State of Louisiana, along with the other defendants, on the theory that its Highway Department was negligent in allowing a defective condition to exist on Highway 117 in the vicinity of the collision. The alleged defective condition consisted of an area approximately 4½ × 7½ feet where the asphalt had been broken, presumably by heavy Army equipment using the Peason Road which is used by the military for maneuver purposes. There was no large hole or a chuckhole: the evidence showed a mere depression in the area of from two to three inches.
"Although the driver of the Matlack truck, Mr. Meaux, denied having entered the south bound, or opposing lane of traffic, the evidence supports the conclusion that he did so at least to the extent of one to two feet. The driver of the oncoming vehicle, Miss Royster, perceived to be confronted by a sudden peril, left the highway on her right, on the west side of 117, completely lost control, and traveled at least three hundred thirty five feet before coming to rest on the east side of the highway in the yard of the Cedars residence. The jury might have concluded, but obviously did not do so, that the negligence of Miss Royster was a contributing factor, by virtue of the speed of her vehicle or her inattention.
"In any event the condition of the highway did not cause this accident. Even if evidence had shown that it was a contributing cause, there is no evidence that the State had notice of the defect and then failed to fix the defective condition. On the contrary, the testimony of Officer Cedars and his wife, who live nearby, established that the State Highway Department had been punctual in response to their calls to repair that condition, from time to time."
The evidence presented by Matlack to establish that the condition of the road was defective was the testimony of Meaux, Arthur Mitchell, another Matlack driver, and Dr. David Bernard, an accident reconstructionist. Mr. Meaux testified emphatically that he did not cross the center line of Highway 117 to avoid the bad area of the road. Mr. Mitchell, who was traveling a short distance behind Mr. Meaux, testified that Meaux's vehicle did not cross the center line. Dr. Bernard testified that if in fact any portion of Meaux's vehicle had crossed the center line, it was due to the physical factors of the road. Dr. Bernard urged that the presence of the area of broken asphalt in the northbound lane would have resulted in a reduced coefficient of friction which would affect the tractor trailer's ability to maintain its lane in the curve.
Plaintiff and Royster both testified that when their vehicle encountered the Matlack truck in the curve, it was across the center line and in their lane of travel. A witness to the accident, Sergeant Jerry Burke, testified that the rear set of dual or tandem wheels of the Matlack truck was across the center line in the southbound lane. Sergeant Burke observed this from his position at the intersection of Highway 117 and the Peason Ridge Tank Road where he was working on his backhoe at the time of the accident. Sergeant Willie Dixon of the State Police, who investigated the accident, testified that when he questioned Mr. Mitchell about the accident, he stated that he was too far back in a hollow and could not see the accident.
The testimony of all of the witnesses, with regard to the bad area in the northbound lane, was that the area was a low spot or depression some two to three inches deep which appeared to be cracked or broken asphalt. The area was not actually a hole, but broken road surface caused by the Army's extensive use of the road with heavy equipment traveling to Peason Ridge Tank Road.
Based upon this evidence and testimony, the trial judge made the findings reproduced hereinabove and we cannot say that he was clearly wrong in finding no defect in Highway 117 which caused or contributed to this accident. Moreover, we cannot *1203 say that the jury was clearly wrong in determining that Meaux was negligent in his operation of his vehicle and that his negligence was a proximate cause of the accident.

NEGLIGENCE OF MS. ROYSTER
Defendant argues that the jury erred in finding no negligence on the part of the driver, Royster. Defendant contends that Royster was inattentive at the time of the accident and she overreacted to some perceived emergency situation which caused her to veer off the road onto the shoulder and lose control of her vehicle.
Royster testified that she was driving within the 55 miles per hour speed limit posted on Highway 117 when she saw the truck in her lane of travel. She stated that she started slowing down, but was only able to avoid a collision with the truck by steering onto the shoulder of the highway. When she attempted to return to the roadway, she lost control of her vehicle, crossed the highway and flipped over, landing in someone's front yard.
Plaintiff testified that Royster said something about the truck being in their lane which prompted her to look at the oncoming vehicle. She testified that the trailer part of the truck was in their lane and that they would have hit it if they had not swerved onto the shoulder.
The State put on Dr. Anthony Galli, an accident reconstructionist, who testified that, in his opinion, for the accident to have happened as it did, Royster had to have been traveling at an excessive rate of speed.
Apparently the jury chose to disregard the testimony of Dr. Galli, Meaux and Mitchell in favor of the testimony of Royster, plaintiff and Sergeant Burke. Determinations of factual questions are generally left to the jury and their findings of fact should not be disturbed unless they are clearly wrong. Soileau v. South Central Bell Telephone Company, 406 So.2d 182 (La.1981). We cannot say that the jury's factual determinations are clearly wrong, based upon the record before us.

DAMAGES AWARDED TO MS. LASWELL
Defendant lastly complains that the jury abused its "much discretion" in awarding general damages of $150,000 and special damages of $25,000 to Ms. Lasswell.
As the court in Reck v. Stevens, 373 So.2d 498, 501 (La.1979) stated:
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
* * * * * *
"Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion,' La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reasons, be considered either excessive * * * or insufficient. * * * Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco [v. Winston Industries, 341 So.2d 332 (La. 1977) ] for purposes of then determining what would be an appropriate award for the present case." (Citations and footnotes omitted.)
Once an abuse of discretion has been determined, the Coco case limits the appellate court to raising an inadequate award to the lowest amount which could have reasonably been awarded and lowering an excessive award to the highest amount that could have reasonably been awarded.
During the course of the accident, Ms. Lasswell was ejected from the rear window of the Royster automobile, thereby sustaining multiple injuries. Wendy and Daniel Cedars, in whose yard the Royster vehicle *1204 landed, testified that plaintiff was laying on the ground, cut and bleeding, complaining of back pain. The Cedars and Sergeant Burke attempted to make plaintiff comfortable until an ambulance arrived. Immediately after the accident, plaintiff was transported to Byrd Memorial Hospital in Leesville.
Upon admittance in the emergency room, plaintiff was examined by Dr. David Steiner, an orthopedic surgeon. Dr. Steiner testified by deposition that plaintiff complained of pain in her shoulder, back and head. She sustained multiple lacerations on the shoulder and back, multiple compression fractures of T11 and 12 and L1. Plaintiff was taken to the operating room and her lacerations were cleaned and sutured. Dr. Steiner prescribed Demerol and Percodan for plaintiff's pain. Plaintiff was discharged from the hospital on May 1, 1985. At that time, Dr. Steiner prescribed a jewitt-type extension brace for the compression fractures.
Dr. Steiner saw plaintiff on May 17, 1985 at which time he noted that her lacerations had healed quite well. Plaintiff was still tender in the lumbosacral area, but moving around reasonably well. On July 17 Dr. Steiner noted that plaintiff was doing very well. She was not complaining of pain, but was still wearing the back brace. Dr. Steiner saw plaintiff on August 26 with complaints of pain on the inside of one of her knees. He testified that she had sustained abrasions and contusions about the knees and ankles in the accident. During this visit, plaintiff also complained of significant pain in the back when not wearing her brace. Dr. Steiner testified that when he saw plaintiff on October 23, her back seemed to be getting somewhat better, but she was still having discomfort overall. Most of her complaints were of pain between the shoulder blades and she complained of periodic headaches. Dr. Steiner reevaluated plaintiff's cervical spine at that time. He testified that she had some discomfort when applying pressure to the area at the base of the neck. The x-rays revealed that she had a reversal of the normal lordotic curve with a change in the curve at the C4-5 level. Applying traction to the neck relieved some of her symptoms. Dr. Steiner's prognosis at the time was that plaintiff would continue to have some problems with her neck. He prescribed a cervical collar for her and physical therapy.
Plaintiff saw Dr. Steiner on November 7 and stated that she was feeling better following physical therapy. Dr. Steiner prescribed a home cervical traction kit for plaintiff. Dr. Steiner last saw plaintiff on May 19, 1986. On that occasion plaintiff was still complaining of discomfort in her low back and pain in her neck and between her shoulders, though Dr. Steiner felt the injury to the cervical spine had progressively improved and stabilized. Examination of the plaintiff revealed that she still had tenderness over the areas of the compression fractures and at the base of the neck. Dr. Steiner testified that it appeared that the scoliotic deformity in the back was slowly increasing. He felt that it would probably stabilize, but that plaintiff would require anti-inflammatory medication and periodic physical therapy. Dr. Steiner testified that if the problems with the cervical spine caused plaintiff sufficient discomfort, then evalution by discography and myelography would be warranted, and possibly cervical fusion. This approach however would depend on how bad the plaintiff hurt. Dr. Steiner recommended that plaintiff continue to use the traction therapy at home. He assigned a functional disability of about 15% or 20%.
The plaintiff also consulted Dr. George Schneider, an orthopedic surgeon, for evaluation of her condition on four occasions from July of 1985 through November of 1986. Dr. Schneider made the same assessments of the plaintiff's condition as Dr. Steiner. In May of 1986 Dr. Schneider felt that plaintiff was in need of extensive physical therapy to regain the range of motions which were being lost in her neck. Dr. Schneider testified that the plaintiff's back problem had stabilized and he did not anticipate that she would have any residual disability in the area, though she might have some discomfort. Dr. Schneider last saw plaintiff on November 13, 1986. At that time he felt that she had some moderate *1205 residuals of the injury to her neck and upper back and that if she were to undergo a well-regulated neck and back rehabilitation program she would progressively improve over a period of several months. He noted that she had difficulty maintaining a physical therapy regimen because of her demanding schedule. Dr. Schneider testified that plaintiff would continue to have difficulties for an indefinite period of time and assigned a functional disability of 15%. Dr. Schneider opined further that if plaintiff's problems persisted, it might be necessary in the future to perform a surgical fusion of the neck. It was his opinion that such a surgery, if performed in the next year, would cost approximately $20,000.
The plaintiff underwent physical therapy during October and November of 1985. The total of her medical bills at the time of trial was $9,140.45.
The defendant argues that an award of $150,000 in general damages is excessive and not warranted by the evidence and an award for future surgery is also unwarranted. It is defendant's position that the plaintiff's treating physicians recommended physical therapy for the neck problems and felt that with this therapy her condition would progressively improve. However, plaintiff failed to pursue a course of physical therapy except for the seven visits she made during October and November of 1985. Defendant contends that this refusal or failure to undergo recommended therapy constitutes a failure on the plaintiff's part to mitigate her damages, therefore defendant should not be responsible for those damages.
The testimony of Dr. Steiner and Dr. Schneider clearly reveals that a course of physical therapy would have provided some relief to the plaintiff. Dr. Steiner's testimony shows that plaintiff did show improvement after her course of physical therapy in 1985.
The plaintiff did not pursue physical therapy in the spring of 1986 because she was trying to finish her college course work and had a varied class schedule. During the summer of 1986 she got married and worked a summer job. She went back to college in the fall of 1986 and had no time for physical therapy because of the daily commuting from Leesville to Natchitoches.
At the time of the accident, plaintiff was a 20-year-old student at Northwestern pursuing an education degree. As a result of her injuries plaintiff was unable to complete the spring semester then in progress. The injury to her neck made studying, driving and student teaching very difficult. She was no longer able to participate in intramural sports at school or any of her other customary athletic activities. Plaintiff was, however, able to resume working after the accident in order to finance her education and did in fact complete her coursework. She additionally planned a wedding and honeymoon during that time. Friends and family testified to the difficulties which she encountered as a result of her injuries.
While we acknowledge that the evidence shows that plaintiff suffered a great deal initially with her back and later with the neck problems, the testimony of the medical experts was that with therapy these problems should have resolved over the course of several months to a year. Drs. Steiner and Schneider suggested continued physical therapy. Dr. John Raggio, a neurosurgeon, saw plaintiff on January 24, 1986, at her attorney's request, for evaluation. Dr. Raggio's opinion was that plaintiff suffered cervical and lumbar strains and a mid-thoracic straining injury and recommended that she continue a course of medication and physical therapy. It was his opinion that most of the plaintiff's problems appeared to be soft tissue injuries with no neurological deficients. He testified that these types of injuries should resolve in a matter of months. The compression fractures could take six months to one year and she might have some discomfort for a prolonged period of time.
By the time of the trial of this case in January of 1987, plaintiff was still suffering from the same problems and had undergone no physical therapy in the preceding year. Clearly, the law requires that an injured party submit to reasonable medical *1206 treatment, including surgery, in order to minimize his damages against a tort-feasor. The burden of showing to what extent damages should be mitigated is upon the defendant tort-feasor. Garsee v. Western Casualty & Surety Co., Inc., 437 So.2d 933 (La.App. 2d Cir.1983), writ denied 440 So.2d 762 (La.1983).
Our review of the medical testimony indicates that the overall impression of the treating and evaluating physicians was that plaintiff's prognosis for recovery was good with physical therapy and treatment with anti-inflammatory medications. Surgery was at no time recommended and plaintiff indicated no intention to resort to surgery to relieve her problems. Any discussion of surgery was speculative and in terms of a future possibility if the difficulties failed to resolve with physical therapy and medication.
After careful review of the record before us and judged against the mass of recent similar cases, and considering that plaintiff failed to fully mitigate her damages, we conclude that the jury abused its "much discretion" in awarding the plaintiff general damages of $150,000 and special damages of $25,000. We find that the highest award which could have reasonably been made is $100,000 for general damages. The award of $25,000 special damages is not supported by the record and should be reduced to $12,500. Reck, supra.

DAMAGES AWARDED TO MS. ROYSTER
The defendant complains that the jury's award of $20,000 in general damages and $3,500 in special damages to Ms. Royster is excessive.
After the accident Ms. Royster was transported by ambulance to Byrd Memorial Hospital for treatment and observation. Ms. Royster complained after the accident that her back was hurting and she had a headache. Ms. Royster stayed in the hospital until April 25, 1985 under Dr. Steiner's care. At the time of her discharge, Ms. Royster testified that she was instructed by Dr. Steiner to see a chiropractor.
Ms. Royster was unable to finish the spring semester at Northwestern and subsequently moved to Lake Charles to live with friends. After moving to Lake Charles, Ms. Royster took a job at Hardee's and enrolled at McNeese.
Ms. Royster began seeing Dr. David Horner, a chiropractor, on July 9, 1985. She was discharged from his care on September 4, 1985. Ms. Royster testified that she suffered from a great deal of pain and discomfort in her back and from headaches during that time.
On January 17, 1986 Ms. Royster consulted Dr. William Foster, a neurosurgeon, complaining of severe low back pain and severe headaches which occurred several times a week. Dr. Foster testified by deposition that upon examination he found that Ms. Royster had a positive straight leg raising test. He felt that she had ongoing manifestations of chronic back strain. He testified that her headaches were of undetermined etiology, but in all probability related to the accident, given no previous history of similar headaches. Dr. Foster felt that Ms. Royster had appropriate findings on examination for her complaints. He prescribed physical therapy which she received. This was the only time that Dr. Foster treated Ms. Royster.
At trial, Ms. Royster testified that the headaches had subsided by April or May of 1986. Her back, she said, still caused some minor discomfort.
Ms. Royster's medical bills totaled $3,317.70.
Based upon our review of the record and analysis of the facts and circumstances peculiar to Ms. Royster, we are compelled to conclude that the jury's award of $20,000 in general damages is excessive. We believe that the highest amount which the jury could have reasonably awarded in this case is $12,000 in general damages. As concerns the award of special damages, Ms. Royster proved past medical expenses of $3,317.70. No future medicals were testified to and anything more than $3,317.70 is not supported by the record. Special damages are therefore reduced to $3,317.70.
*1207 For the reasons assigned herein, the judgment of the trial court is amended to reduce the award in favor of Nonie Laswell to $100,000 in general damages and $12,500 in special damages; to reduce the award to Leare Michelle Royster to $12,000 in general damages and $3,317.70 in special damages; and the judgment in all other respects is affirmed. Costs of this appeal are assessed to appellant, Matlack, Inc.
AMENDED AND AFFIRMED AS AMENDED.