JiDOUCET, Chief Judge.
Defendant, the Rapides Parish Police Jury (the Police Jury), appeals a judgment of the district court finding it (through its employee, Dennis O’Neal) 100% at fault in causing the traffic accident which gave rise to this suit and in awarding plaintiff, Angelia Dauzat (now Coon), what it alleges to be excessive general damages in the amount of $350,-000.00; past medical expenses of $14,995.31; and future medical expenses of $30,000.00. Ms. Coon appeals alleging the trial court erred in not awarding her any damages for future lost earnings and/or earning capacity. Plaintiffs, Angelia Coon and Fern Dauzat, answered defendant’s appeal seeking damages for frivolous appeal. After the appeals were filed and answered, the Police Jury satisfied the judgment rendered in favor of Mrs. Fern Dauzat who joined in a motion to have | gthat portion of the Police Jury’s appeal dismissed. Mrs. Dauzat reserved her right to seek damages for frivolous appeal. FACTS
This ease arises out of a two vehicle accident which happened on E. Paul Road on Thursday, October 31, 1991. The accident happened at a ninety (90) degree turn to the left (north). The roadway is 16.6 feet wide at that point. Dennis O’Neal, an employee of the Rapides Parish Police Jury, was operating a dump truck owned by the Police Jury in an easterly direction approaching the blind curve. Ms. Fern Dauzat was traveling west-wardly in her 1983 Buick Century, approaching the same curve. Neither driver estimated the speed of the respective vehicles at more than ten miles per hour. In the passenger side of the front seat was a small child whom Mrs. Dauzat was baby-sitting. Angelia Dauzat (who has since reached majority, been added as a plaintiff and has married, and will henceforth be referred to by her marriage name of Coon), Fern Dau-zat’s daughter, was a passenger in the back seat of the Dauzat vehicle. Also in the back seat of the Dauzat vehicle was an infant for whom the younger Ms. Dauzat was babysitting. As the two vehicles attempted to negotiate the curve in their respective directions, the left front of the Dauzat vehicle and the left rear wheels of the Police'Jury dump truck made contact. The collision took place at or near the center of the roadway which has no center line. The Dauzats’ ear remained in the roadway, while the dump truck, which swerved to the right in an attempt to avoid the collision, came to rest in the ditch on the north side of the roadway (the dump truck’s right-hand side). The driver of the dump truck admitted that before the collision he was in the Dauzats’ lane of travel, attempting to “take the curve on the inside.”
13Angelia Coon stated that just before the collision she lay herself across the infant in the rear seat and braced herself to protect the child. She testified that the crash neither threw her onto the back of the front seat nor around inside the car. After the crash she was able to exit the vehicle unassisted. Ms. Coon said that immediately following the accident she was emotionally shaken and did not feel that she was injured, but several hours after the accident, when she calmed down, she began to experience pain in her neck and back. Ms. Coon did not seek medical attention immediately, but when her pain persisted over the week-end, on Monday she contacted Dr. Warren Plauche, whom she saw on two occasions: November 4 and 13, 1991. On the later visit Ms. Coon requested her records be transferred to Dr. L.J. Mayeux.
Dr. Mayeux treated Ms. Coon on a regular basis between November 22, 1991, and April 6, 1992. At her initial visit Dr. Mayeux noted Ms. Coon complained of neck and low back pain. His examination revealed tenderness and spasm over both the cervical and lumbar regions of the spine. He diagnosed his patient as having cervical and lumbar *486 spasms. Dr. Mayeux decided to treat Ms. Coon conservatively, ordering a muscle relaxant, an anti-inflammatory and physical therapy. By the middle of December 1991, Ms. Coon reported that her pain was “somewhat” better and by March 23, 1992, Dr. Mayeux reported she was much better with decreased spasms and tenderness plus an increased range of motion.
Ms. Dauzat called on March 80, 1992, to report; her daughter’s pain had increased and to request x-rays be taken. Dr. Mayeux honored that request and on April 6, 1992, the parties met to review the x-rays. The radiologist’s report stated that “... the vertebral bodies are well aligned, disc spaces are maintained, no definite fractures, dislocations or bony abnormalities were noted.” Also, at that visit, Dr. RMayeux noted Ms. Coon’s neck showed diminished spasm and tenderness and that her back and range of motion had also improved.
Dr. Mayeux did not see Ms. Coon again until October 22, 1992. On that visit Ms. Coon reported that her neck and back pain had returned while she was doing some housework. At that point, Dr. Mayeux decided to refer Ms. Coon to Dr. Bruce Razza, an orthopedic surgeon in New Orleans, for evaluation. Dr. Mayeux saw plaintiff twice more before a consultation could be scheduled, and prescribed a muscle relaxant and an analgesic.
Dr. Bruce Razza saw Ms. Coon only once, on December 10, 1992. He described Ms. Coon as an obese teenager who appeared to be in no acute distress. His examination determined that plaintiff was five feet three inches tall, weighed over two-hundred pounds, had mild muscle tightness and tenderness in her neck compatible with possible mild spasm, and a slightly restricted range of motion. His findings in the lumbar region were essentially the same. He found no neurologic defects of either the upper or lower extremities, and that plaintiff had a negative straight leg raising test, normal posture and gait. His diagnosis was chronic cervical and lumbar pain syndrome. He recommended an aggressive home exercise program, a corset, moist heat, weight reduction and sparing use of medications. Dr. Razza also ordered both cervical and lumbar MRI’s.
The MRI of Ms. Coon’s cervical spine revealed mild disc bulges at the C-5/C-6 and G-6/C-7 levels, with some evidence of spasm; the lumbar MRI revealed mild bulging at the L-3/L-4 and L-4/L-5 levels with a subliga-mentous central disc herniation at L-5/S-1. Dr. Razza found the results to be consistent with Ms. Coon’s complaints and based upon her history of no prior or subsequent trauma related her condition to the accident of October 31, 1991. While Dr. Razza did state that it was ^possible for injuries like those sustained by Ms. Coon to heal on their own, he was of the opinion, based upon her present condition and the length of time between the injury and his examination, that Ms. Coon’s injuries would not resolve themselves. However, he also stated that whereas a person of normal weight could recover in a matter of months, an obese person, such as plaintiff, would be expected to take longer to heal, perhaps up to a couple of years. Dr. Razza noted that at the time of his examination Ms. Coon weighed over 200 pounds and that he would consider her ideal weight to be between 100 and 120 pounds.
When questioned about plaintiffs disability, physical limitations, and prospect for surgery, Dr. Razza stated that a herniated disc would normally elicit a 10% partial anatomic disability rating and bulging discs would receive no rating. Dr. Razza recommended plaintiff should refrain from repetitive lifting, bending, squatting, stooping, or climbing, should avoid prolonged sitting or standing, avoid repetitive lifting of more than 15 pounds, and not lift more than 25 to 40 pounds maximum. He stated that at the time of his examination he did not consider Ms. Coon a candidate for surgery and could only speculate as to the possible need for surgery in the future.
Ms. Coon returned to Dr. Mayeux on December 17, 1992, to review the results of her MRI’s, request medications and ask for a referral to a physician in Illinois, where she was moving to attend bible college.
Dr. J.R. Lee of Rock Island, Illinois, was consulted by Ms. Coon on January 27, 1993. *487 Dr. Lee’s report of his examination states in part as follows:
Examination reveals she is a well-developed, well-nourished female in no acute, no chronic ill appearance. Neck examination reveals neck has full motion in flexion, extension, lateral bending and axial rotation. Upper extremities have normal motor sensory function. Normal deep tendon reflex. Neck is slightly tender at base. No muscle spasms, no deformity, no scar. Lumbar examination revealed both shoulders and pelvis level. Spine straight. Range of motion normal in flexion, extension, lateral | abending, and axial rotation. Minimum tenderness in lower lumbar region. Loading test induces mild discomfort in the low back but not the leg. Walking gait is normal. Able to perform tiptoe and heel walking. Squat down and stand up with full motion of hips, knees and ankles. In sitting position, knee and ankle jerks normal and symmetric. No weakness of toe and foot muscle. In supine position, straight leg raising 90 degrees. Farber test is negative. In prone position, there is no tenderness in dorsal spine, but mild tenderness in lower lumbar area. Sciatic nerve is not tender.
On the basis of history, physical findings, x-ray study and review of her MRI, in my opinion, cervical and lumbar ... discs are caused by the injury of October 31, 1991. In my opinion, she has reached maximum recovery with residual functional impairment due to persistent pain and discomfort. She may need occasional physical therapy or medication to control the pain and discomfort, and clinic follow-up to make sure she does not need any further investigative tests.
In his deposition, Dr. Lee stated that Ms. Coon’s denial of any radiating pains indicated the absence of any nerve root irritation. He found no need for any neurologic work-up and stated that he would concur with Dr. Razza’s recommendations that plaintiff engage in an aggressive home exercise program and lose weight. Dr. Lee did not consider Ms. Coon a candidate for surgery and stated that he would place no physical restrictions on her activities. Dr. Lee’s last contact with Ms. Coon was when she called his office to request he authorize some refills for her on June 16,1993. There is no indication that Ms. Coon has sought any medical treatment since that time.
In sum, none of the doctors who either examined or treated Ms. Coon felt that she was a candidate for surgery at the present time. The closest that any doctor came to assigning a disability rating was Dr. Razza’s statement that he would normally assign a 10% partial anatomical rating to a herniated disc. However, Dr. Razza also said he would defer to the physician who had seen plaintiff last since he had only seen her once, in December 1992. Doctors Razza and Mayeux would place somej^restrictions on Ms. Coon’s physical activities whereas Dr. Lee would place no restrictions on her. None of the doctors could say that Ms. Coon would definitely need surgery in the future; rather, they opined that, because of her young years at the time of the accident and the fact that her back had been weakened by the accident, it was likely that she would need further treatment in the future. They all felt she was free to pursue college studies and none addressed any career or job restrictions.
LAW AND DISCUSSION
This ease turns on the legal principles of manifest error and abuse of discretion. The most recent pronouncement by the Louisiana Supreme Court on the principle of manifest error review is found in Ferrell v. Fireman’s Fund Insurance Co., et al, 94-1252, pp 4 & 5 (La. 2/20/95), 650 So.2d 742, wherein the court explained:
In Rosell v. ESCO, 549 So.2d 840 (La. 1989), we synthesized the ‘manifest error’ and ‘clearly wrong’ appellate review of facts limitations that have been handed down by this court in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) and Canter v. Koehring, 283 So.2d 716 (La. 1973) and the United States Supreme Court in Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504 [84 L.Ed.2d 518] (1985), Zenith Radio Corp. v. Hazeltine Research, Inc. 395 U.S. 100, 89 S.Ct. 1562 [23 L.Ed.2d 129] (1969), and United States v. U.S. Gypsum Co., 333 *488 U.S. 364, 68 S.Ct. 525 [92 L.Ed. 746] (1948), as follows:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong,’ and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. * * ⅜ The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the findings in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighted the evidence differently. Where there are two permissible views Isof the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. * ⅛ * In applying the manifestly erroneous — clearly wrong standard to the findings below, appellate courts must constantly have in mind that their review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Id. at 844-45 (citations omitted).
Our opinion in Stobart v. State, 617 So.2d 880 (La.1993), was not intended to change that synthesis or to make the scope of appellate review of facts any more limited than described in Rosell, Arceneaux, Canter, et al, supra. As we stated in Ambrose v. New Orleans Police Ambulance Service, 639 So.2d 216, 221 (La.1994), “it was not our purpose in [Stobart ] to mandate that the trial court’s factual determinations cannot ever, or hardly ever, be upset.” Consequently, the Court of Appeal in the present case was mistaken in concluding that Stobart had further constricted the scope of review so as to make it “extremely limited.” Ferrell v. Fireman’s Fund Ins. Co., 635 So.2d 1152, 1156 (La.App. 4th Cir.1994).
Applying those principles to trial court’s determination that the Police Jury, through its driver, Dennis O’Neal, was 100% at fault in causing the accident, we find no error in that conclusion. Ms. Dauzat and Ms. Coon both testified that when they lafirst saw the Police Jury’s truck it was on their side of the roadway. The state trooper who investigated the accident found such to be the case and the driver admitted that at one point he had encroached on plaintiffs’ side of the road.
As to the trial court’s failure to award damages for loss or impairment of earning capacity, the trial judge stated: “There was not sufficient proof offered this Court that establishes that the accident and injury impaired plaintiff’s earning power; and it was not proven that the automobile accident disabled her from gainful employment ... ”. We find no clear error in this determination. Not one witness testified that Ms. Coon was unable to pursue a college degree or unable to pursue a career. In fact one physician saw no reason she could not continue to baby-sit, so long as she was careful as to how she picked up any children in her care.
*489 Ms. Coon also argues the trial judge erred in denying her motion for a new trial and urges this court to remand the case for taking of evidence related to a possible loss of earning capacity. She particularly points to a September 1994 report from a rehabilitation counselor and an October 1994 report from an economist. Both of these documents were prepared more than six months after the trial in this matter. Plaintiff offers no explanation as to why these reports could not have been prepared before trial and offered into evidence at the proper time. Accordingly, we find no error in the trial judge’s refusal to grant a new trial and we refuse to order remand. See La.Code Civ.P. arts. 1972 and 1973.
Both Ms. Dauzat and Ms. Coon move for sanctions for frivolous appeal. In Dear v. Mobile, 93-1188 (La.App. 1 Cir. 5/20/94) at 6, 637 So.2d 745, 748 our brethren of the first circuit stated:
Defendants answered the appeal, seeking an award for damages for frivolous appeal. Damages for frivolous appeal are awarded pursuant to LSA-C.C.P. art. 2164. However, since this statute is penal in nature, it must be strictly construed. Nungesser v. 11(Nungesser, 558 So.2d 695, 701 (La.App. 1st Cir.), writ denied, 560 So.2d 30 (1990); Fisk v. Mathews, 525 So.2d 223, 227 (La. App. 1st Cir.1988). Moreover, appeals are favored and penalties for frivolous appeal will not be imposed unless they are clearly due. Nungesser, 558 So.2d at 702; Fisk, 525 So.2d at 227. Even when an appeal lacks serious legal merit, damages for a frivolous appeal will not be awarded unless it is clear that the appeal was taken solely for the purpose of delay or that appellant is not serious in the position he advocates. Fisk, 525 So.2d at 227.
In the present case, we do not find any merit in the Police Jury’s argument that the trial judge erred in finding it to be 100% at fault (through its employee) in causing the accident. However, we do not find that issue was raised “solely for the purpose of delay or that appellant was not serious in the position he advocate[d].” Thus, sanctions are denied.
We now turn our attention to the quantum of damages awarded. The Police Jury argues that the awards for general damages and for medical expenses are excessive and should be reduced. In reviewing these awards we are guided by the principles expounded by our supreme court in Youn v. Maritime Overseas Corporation, 623 So.2d 1257, 1260, 1261 (La.1993), cert. denied, — U.S. —, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), wherein the court stated:
In Reck v. Stevens, 373 So.2d 498 (La. 1979), this Court commented on appellate review of general damage awards and on the ‘much discretion’ in fixing damages accorded to trial courts by La.Civ.Code art. 1934(3) (1870). The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
In Reck, this court disapproved the appellate court’s simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of |na scale of prior awards in eases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the ‘much discretion’ of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably *490 ■within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So,2d 803 (La.1974).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239,158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is ‘great,’ and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award, [footnote omitted]
We turn first to the medicals. The Police Jury did not contest any of the $14,-995.31 in past medical expenses submitted by Ms. Coon. Accordingly, they cannot be heard to complain now. As to the award of $30,000.00 in future medical expenses, we find the award to be most generous, but not so generous as to be an abuse of the trial judge’s much discretion. Ms. Coon was sixteen years old at the time of the accident. She did suffer injury to her back which would make her more susceptible to further injury in the future. Considering the life expectancy of a sixteen year old today, and the distinct possibility that she will need some medical locare for her back in the future, we find we have no choice but to affirm the award for future medical expenses.
However, we find the trial court’s award of $350,000.00 for pain and suffering to be excessive. In March and April of 1992, Ms. Coon reported that she was much improved. For the six months following April 1992, she sought no medical care. Not one doctor felt that she was a candidate for surgery and none could definitely say that she would need surgery in the future. According to the record, she had not received prescriptions for any medication nor seen any physician for the nine months preceding the trial of the matter. At trial she testified that the only medication she was currently taking for her back was Extra Strength Tylenol. Pain which can be controlled by Extra Strength Tylenol does not support an award for pain and suffering of $350,000.00.
In attempting to determine the highest award reasonably in the discretion of the trier of fact we first examined the particular injury to Ms. Coon and its long and short term effects. We note that plaintiff appeared to have significant pain for approximately five months following the accident. She then appeared to go approximately six months relatively pain free, followed by about a nine month span wherein she had moderate intermittent pains, and the final nine months before trial she appeared to have mild intermittent pains. While Ms. Coon claims that prolonged sitting causes her pain, we note that since the accident she has made no less than three round trips by car between Louisiana and Illinois, a trip which she estimates takes between 17 and 20 hours one way. She also testified that while in Illinois she did some baby-sitting work. Further, she freely admitted that during the course of treatment by Dr. Mayeux, he never imposed any physical restrictions, but rather only advised her to “be careful”. Her medical records show that she sustained four bulging | -igdiscs and one herniated disc in the accident, and as a result is more likely, than a person who has not been injured, to have back problems as time progresses. While no surgery has been recommended or contemplated, the need for surgical intervention in the future is greater for Ms. Coon than it would be for someone with an intact back. Clearly the injuries she sustained and the impact they have had on her life do not support the trial court’s award of $350,000.00.
*491 In American Motorist Insurance Co. v. American Rent-All, Inc., 579 So.2d 429 (La. 1991) the supreme court awarded $150,000.00 (the appellate court had reduced a trial court award of $300,000.00 to $50,000.00) to a plaintiff who had sustained a two-level disc injury which required surgery which left her with a 15% anatomical impairment, and who suffered headaches, neck, back, shoulder and arm pains from the date of he accident through her recovery from surgery among other things.
This court found a general damage award of $150,000.00 to an automobile passenger who suffered lacerations and multiple compression fractures of the spine to be excessive and reduced said award to $100,000.00. See Lasswell v. Matlack, Inc., 527 So.2d 1199 (La.App. 3 Cir); writ denied 532 So.2d 104 and 153 (La.1988).
We note our brethren of the fourth circuit affirmed, as within the trial court’s discretion, a general damage award of $250,000 to a plaintiff who underwent a successful single level cervical fusion following a rear end collision involving two streetcars. See Davis v. Kreutzer, 93-1498 (La.App. 4th Cir. 2/25/94), 633 So.2d 796, writ denied, 94-0733 (La. 5/6/94), 637 So.2d 1050.
More recently, in Dupre v. Exxon Pipeline Co., 93-1528 (La.App. 3 Cir. 6/1/94); 638 So.2d 1118, this court affirmed, as not being so low as to be an abuse of discretion, an award of general damages of $100,000.00 to a plaintiff whoJi4Sustained neck and back injuries which required two surgeries over a three year period.
Finally, in Nugent v. Continental Casualty Company, 93-867 (La.App. 3 Cir. 3/2/94); 634 So.2d 406, a panel of this court raised from $10,00.00 to $40,000.00 the general damage award to a plaintiff who sustained bulging discs at two levels, carpal tunnel syndrome and continual pain which caused a significant curtailment in lifestyle of a previously active person.
Considering those awards and the injuries and effect therefrom on Ms. Coon, we find the highest possible award of general damages to her, which would not be an abuse of discretion, to be $225,000.00.
Accordingly, for the reasons stated, the general damage award to the plaintiff, Angelia Coon is reduced to 225,000.00; in all other respects the judgment of the trial court is affirmed. The requests for damages for frivolous appeal are denied. Costs of this appeal are assessed equally between Angelia Dauzat Coon and the Rapides Parish Police Jury.
AMENDED AND AFFIRMED AS AMENDED.