h STEWART, Judge.
At issue in this appeal by the plaintiff, Zuniga Mosley, is the adequacy of the trial court’s award of general damages in the amount of $50,000 and the failure of the trial court to award damages for loss of future earning capacity. Finding no abuse of discretion by the trial court, we affirm.
FACTS
On November 13, 1997, Zuniga Mosley was injured when the driver of the Caddo Parish school bus in which she was riding lost control of the bus, causing it to skid along the highway and flip over. Mosley was removed from the bus and taken by ambulance to Louisiana State University Medical Center (LSUMC). Her injuries included compression fractures of four thoracic vertebrae (T5-8) and a broken rib. While at LSUMC, she underwent an arter-iogram to rule out any vascular injury. She also wore a hard cervical collar because of neck pain until cervical spine x-rays showed no cervical injury. She was discharged from LSUMC on November 15, 1997, with instructions to ambulate as tolerated and to restrict her activities.
Mosley returned to school a week later. She used a wheelchair to get around for two months after the accident. Because of her injuries, she had to restrict her extracurricular activities, particularly those involving physical activity. She attended physical therapy from November 1997 through February 1998 for back and neck pain.
On May 12, 1998, Mosley sought treatment from Dr. Austin Gleason, an ortho-paedic surgeon. Dr. Gleason confirmed the diagnosis of thoracic compression fractures at four levels and referred her to physical therapy forRa vigorous rehabilitation program. Dr. Gleason also prescribed Ibuprofen and encouraged Mosley to slowly increase her activities as her strength and range of motion increased. Mosley then attended physical therapy three times a week for three months, and her condition improved to normal. Dr. Gleason treated Mosley intermittently until October 2000. Based on the four compression fractures, he concluded that she suffered an 8% total body impairment. Due to this impairment, Mosley has an increased risk of arthritic changes as she ages and is restricted from excessive bending, stooping, or lifting. At an examination on September 20, 1999, Dr. Gleason found early signs of degenerative process, namely some bone spur formation extending from the T3 to T8 vertebrae. On his last visit with Mosley on October 4, 2000, Dr. Gleason found Mosley’s range of motion to be at 80% of normal. Also, she had given birth to a child eight weeks prior to this visit and was experiencing some pain and discomfort when nursing and handling the baby.
Mosley filed the instant suit against the Caddo Parish School Board and Shirley Marie Taylor, the driver of the school bus.[1] The defendants stipulated to liability at trial, so the only issue before the trial judge was that of damages. In an oral ruling, the trial judge found that Mosley had been an active student prior to the accident and that she had to forego a number of activities due to the injuries she sustained. These injuries included four compression fractures, a broken rib, and *270 others of a less serious nature. The trial judge found that Mosley suffered serious pain from her injuries, though |sshe may have later exaggerated her symptoms a bit. He also found that she required the use of a wheelchair to get around after the accident, but that she did not have to use it as long as she did. The trial judge accepted the testimony that Mosley suffered an 8% overall body impairment, that she would have a greater problem with arthritic changes in the future, and that she would need some limited medical assistance in the future. Finally, the trial judge found that Mosley suffered some emotional distress, but that it was fairly minor and would not continue in the future. Based on these findings, the trial judge awarded Mosley general damages of $50,000, in addition to past medical expenses of $14,403, future medical expenses of $5,000, and lost wages of $348. Mosley appeals this judgment on the basis that the general damages are too low and that the trial judge abused his discretion in failing to award any damages for loss of future earning capacity.
DISCUSSION
With regard to appellate review of an award of general damages, the Louisiana Supreme Court has set forth the following standards:
In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury. Reck v. Stevens, 373 So.2d 498 (La.1979). The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Id. Only if the reviewing court determines that the trial court has abused its “much discretion” may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
Because the discretion vested in the trial court is “great,” and even vast, an appellate court should rarely disturb an award of | ¿general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id.
Andrus v. State Farm Mutual Auto. Ins. Co., 95-0801 (La.3/22/96), 670 So.2d 1206, 1210, rehearing denied. Thus, in addressing Mosley’s contention that the award of general damages in the amount of $50,000 was too low, our threshold determination is whether the trial judge abused his discretion in making this award. This determination requires us to review the particular facts of this matter as set forth in the record.
In addition to the testimony of Dr. Gleason, which has already been discussed, the trial judge heard other expert testimony regarding the injuries sustained by Mosley. Dr. Donald R. Smith, a neurosurgeon, treated Mosley following the accident and on one occasion after her discharge from LSUMC. Dr. Smith testified that Mosley sustained a broken rib and thoracic compression fractures. However, he found the compression to be minimal. He prescribed a pain medication and expected a good recovery with no serious impairment. He advised her to limit her activities upon her return to school and to *271 avoid physical education class until after the first of the year. Dr. Smith did not feel that Mosley was exaggerating her symptoms. Rather, he believed that she experienced real pain from her injuries and that she displayed an appropriate level of anxiety.
Dr. Albert Dean, Jr., testified on behalf of the defendants as an expert in orthopedics. Dr. Dean did not treat the plaintiff. He only examined her lBmedical records and x-rays. He agreed with Dr. Gleason regarding the injuries sustained by Mosley, namely the thoracic compression fractures. However, Dr. Dean did not agree with Dr. Gleason’s finding of degenerative changes evidenced by the formation of bone spurs. With regard to Dr. Gleason’s finding of an 8% total body impairment, Dr. Dean explained that Mosley does not have a functional disability. Dr. Dean advised that Mosley should be active. He prescribed exercise and lots of walking.
Expert testimony was also presented to address Mosely’s mental pain and suffering from the accident. Dr. Paul Ware, an expert in psychiatry, neurology and forensic medicine, saw Mosley on November 18, 1998 to determine whether she suffered any cognitive impairment from the accident. He found none and noted that Mosley required no further evaluation or treatment. However, he did conclude that she suffered mild post-traumatic stress disorder which gradually subsided with time and that she exhibited some symptoms of post-concussion syndrome. He also found that she experienced a “slight depression” or “transient sadness” following the accident. These findings were based on the history reported by Mosley. Dr. Ware felt that Mosley had made a good recovery from her injuries and that she had regained her equilibrium. He noted the support she received from her family throughout her recovery and the fact that she coped so well with the injuries she sustained.
Dr. George Seiden, an expert in general and forensic psychiatry, testified on behalf of the defendants. Contrary to Dr. Ware’s conclusions, [fiDr. Seiden did not believe that Mosley’s history supported a diagnosis of either post-concussion syndrome or post-traumatic stress disorder. He did not believe that Mosley’s symptoms fit the diagnostic criteria for these conditions. However, Dr. Seiden did conclude that Mosley suffered some mental distress, including anxiety and depression, as a result of the accident.
Mosley testified regarding the effects of the accident on her life. She recalled being scared, frightened, cold, and in very bad pain following the accident as she waited for the ambulance. After the accident, she did not have a bowel movement for two months and had to seek medical treatment at the hospital for this condition. When she returned to school, she had to use a wheelchair because of the pain, and she could not participate in extracurricular activities that involved physical activity. She was unable to return to her job at Schlotzsky’s Deli where she worked fifteen to twenty hours a week before the accident. She tried to return to work as a waitress in the spring of 1999, but she had difficulty carrying trays. She also worked as a cashier at Foot Action, but claimed that she had difficulty standing for long periods of time. She lamented the fact that she could no longer pursue a military career due to her injuries. Mosley testified that she had nightmares in which she relived the accident. Moreover, she testified that she thinks about the accident every time she sees a school bus. Mosley described herself before the accident as ambitious, happy, very active, and headed in the right direction. She testified that she became a different person after the *272 accident — less motivated, frustrated with not being able to do all the things she used to do, and deprived of her goals and dreams. She 17testified that she still experiences back pain every now and then. On cross-examination, Mosley testified that she went to Louisiana State University in Shreveport for two semesters and then transferred to Northeast Louisiana University. She was majoring in computer science, but then switched to general studies. She stayed out on maternity leave, but wants to return to college.
The defendants presented some impeachment testimony regarding Mosley’s condition.' Marsha Dunn, Mosley’s high school counselor, testified that she never heard Mosley discuss a military career. Additionally, Dunn saw Mosley walking at a shopping mall with friends one weekend during the time that Mosley was attending school in a wheelchair. John McLean, a manager of a restaurant where Mosley worked following the accident, testified that he did not recall her mentioning any back problems. He also testified that her employment ended due to violations of policy, such as missing shifts. Another former employer, Ronald Coleman of Foot Action, testified that Mosley would ask to sit down while hanging big shipments of clothes. However, he did not recall her mentioning any back problem, and he noted that she left the job when she transferred to school in Monroe.
After careful review of the evidence presented, we do not find that the trial judge abused his vast discretion in awarding general damages of $50,000 to this plaintiff. Mosley cites Lasswell v. Matlack, Inc., 527 So.2d 1199 (La.App. 3d Cir.1988), writs denied, 532 So.2d 104 (La.1988) and 532 So.2d 153 (La.1988), as a case supporting an award of general |sdamages of $100,000. However, the plaintiff in Lasswell, while suffering similar injuries, also suffered multiple lacerations on her back and shoulder which required treatment in the operating room to clean and suture them. Moreover, the jury’s award of general damages of $150,000 was lowered on appeal to $100,00 — the highest award which could have reasonably been made for general damages under the circumstances of that case. In the instant matter, the trial judge’s reasons and award were amply supported by the record. Mosley experienced a traumatic accident which caused her some mental and physical pain and suffering. However, the expert testimony was that she recovered quickly from any mental distress she experienced. She also made a good recovery from her physical injuries, although she has some permanent impairment that will likely result in, and may already be causing, degenerative changes as she ages. Mosley has been able to go on with her life by attending college, having a child, and marrying. No substantial impairment of her daily activities was shown in this record. Considering the particular injury to this particular plaintiff under the particular circumstances of this case, we find the award of general damages to be reasonable.
Mosley also asserts that the trial judge erred in failing to award damages for loss of earning capacity. She argues that due to her injuries she cannot join the military or perform heavy labor. She asserts that segments of the workforce are now closed to her and that this evidences a loss of economic opportunity.
| ¡Awards for loss of future income or future earning capacity are inherently speculative and insusceptible of calculation with mathematical certainty. Odom v. Claiborne Electric Co-op., Inc., 623 So.2d 217 (La.App. 2d Cir.1993), writ denied, 629 So.2d 1171 (La.1993); Moody v. Blanchard Place Apartments, 34,587 (La.App.2d Cir.6/20/01), 793 So.2d 281. In this in *273 stance, though, the record is devoid of any evidence on which to base even an inherently speculative award. Mosley was a high school student at the time of the accident who worked part-time. She was able to resume part-time employment some months after the accident. Although Mosley testified that she had some back problems at jobs as a waitress and a cashier, her former employers who testified did not recall complaints of back problems. Marsha Dunn, Mosley’s counselor and JROTC advisor in high school, did not recall Mosley expressing interest in a military career. Instead, Dunn recalled that Mosley intended to go to college. Mosley did in fact attend college and testified that she wanted to resume her college education. Mosley majored in computer science at one time, and she testified that she did not have problems working on her computer at home. Although Dr. Gleason testified that Mosley should avoid excessive bending, stooping, or lifting, he did not believe that she would have any limitations with a desk job or sedentary type of employment. While Mosley may not be able to join the military or work in heavy labor, this does not demonstrate a loss of future earning capacity. We find no error in the trial court’s failure to award damages for loss of earning capacity to this plaintiff.
^CONCLUSION
For the reasons discussed, we affirm the trial court’s judgment and assess costs of this appeal to the appellant.
AFFIRMED.

. Another plaintiff, Nekesha Williams, settled her claim with the defendants prior to trial.