635 So.2d 1152 (1994)
Reva Spiegal, Wife of/and Edward R. FERRELL
v.
FIREMAN'S FUND INSURANCE COMPANY, Liberty Mutual Insurance Company, et al.
No. 92-CA-2116.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1994.
Opinion Granting Limited Rehearing March 14, 1994.
*1153 Frank J. D'Amico, Darla D'Amico, Frank J. D'Amico, A Professional Law Corp., New Orleans, for Reva Spiegal, Wife of/and Edward R. Ferrell.
Robert M. Johnston, Adams and Johnston, New Orleans, for Fireman's Fund Ins. Co.
Frederick W. Bradley, Kathleen F. Ketchum, Liskow & Lewis, New Orleans, for Kimmie D. Cranford, Enterprise Leasing of New Orleans, and Liberty Mut. Ins. Co.
Before KLEES, WARD and LANDRIEU, JJ.
WARD, Judge.
Mr. and Mrs. Ferrell sued for damages they received in a multi vehicle accident on Interstate 10 in the City of New Orleans. After Mr. and Mrs. Ferrell settled their claims with some of the defendants, the case proceeded to trial against the remaining defendants. The jury returned a verdict in favor of the remaining defendants, finding they were not negligent. Mr. and Mrs. Ferrell have appealed, alleging trial court error led the jury to a manifestly erroneous finding of fact.
Most of the facts are not disputed and when disputed, the difference is insignificant. The accident occurred on August 12, 1985, in the early evening hours at dusk. The weather was rainy, with overcast skies, and visibility was poor, except for the well lit overpass where the accident occurred.
Five vehicles were involved in this accidenta Mazda owned by Ms. Patrice Brown, a Chevrolet driven by Kimmie Cranford, a Ford LTD driven by police officer Reid Noble, a Toyota driven by Edward Ferrell, and a Cadillac driven by Antoine Paudice. A sixth vehicle, not described, and with an unknown driver, allegedly was also involved.
Ms. Patrice Brown was driving home from work when she lost control of her Mazda on the incline of the I-10 overpass at Read Road. She claims the steering mechanism failed, other witnesses said the car "hydroplaned". She struck the left hand guard rail, spun around, and skidded in the left lane of I-10. She claims she came to a stop adjacent to the guard rail, out of the left lane, in the safety accident lane, facing oncoming traffic. The precise position of Brown's vehicle following the spin is in dispute.
Mr. Kimmie Cranford was traveling on I-10 behind Ms. Brown when he observed her car "hydroplane", strike the left rail, spin around and come to a stop facing the oncoming traffic. Cranford says the Mazda stopped in the left hand lane, blocking traffic, not in the safety lane. He stopped his car in the left hand lane behind her car, put on the *1154 emergency signal, got out and went to assist Ms. Brown. He helped push her car from the left lane to the emergency lane before a police car drove up and stopped behind his car.
Officer Reid Noble was driving her Ford LTD unmarked police car on I-10 when she observed traffic congestion on the Read Road overpass. She slowed down and stayed in the left hand lane when she observed Brown's Mazda stopped in the emergency lane and turned in the wrong direction. Cranford's Chevrolet was stopped behind the Mazda, with the emergency lights on. She pulled her Ford LTD to a stop behind Cranford's Chevrolet, and turned her emergency flashing lights on, and radioed headquarters that she was stopping to investigate an accident. All three vehicles were on the elevated portion of the overpass, and at least Cranford and Noble had their flashers on. When Noble found there was no personal injury she told Brown and Crawford to move their vehicles if possible, so as not to cause an accident, and went back to her vehicle to report the situation. An unidentified "phantom" vehicle with a City of New Orleans sticker swerved to avoid her LTD, skidded into the right lane guard rail, and continued on down I-10.
Edward Ferrell was driving his Toyota; his wife was his `guest passenger'. When driving on I-10 he was behind a vehicle in the left hand lane, when that vehicle suddenly swerved to the right. When it swerved he saw Noble's police car in front of him but he could not avoid hitting it. When he hit the police car, it was knocked forward into Cranford's Chevrolet. Ferrell's Toyota came to rest in the middle lane of I-10, where it was struck by Paudice's Cadillac.
Antoine Paudice was driving his Cadillac on I-10. When he saw Ferrell's Toyota stopped, blocking the middle lane of traffic he could not avoid hitting it. Paudice's Cadillac smashed into Ferrell's Toyota. Paudice was injured, but not as severely as Mr. and Mrs. Ferrell. Mr. and Mrs. Ferrell sued the drivers and insurers of the other five vehicles. Mr. Paudice sued the drivers and insurers of the others, including Mr. Ferrell, one of the plaintiffs in this lawsuit.
Prior to trial, Mr. and Mrs. Ferrell settled their claims against Paudice, Officer Reid Noble and the City of New Orleans. There remained for trial their claims against Ms. Brown and her insurer, Fireman's Fund, and against Mr. Cranford and his insurer, Liberty Mutual, and Enterprise Leasing who leased the car to Cranford. The jury returned a verdict absolving Ms. Brown and Mr. Cranford of any fault, and apportioning fault among the four other drivers; Officer Noble, Antoine Paudice, the "phantom vehicle," and the plaintiff himself, Edward Ferrell. The plaintiffs appealed. We have considered the eleven assignments of error and we affirm.
We will first consider those assignments of error that go to evidentiary rulings. During this vigorously contested, lengthy trial there were many evidentiary rulings, not all were correct, nor could they be, considering the numerous objections. Trial judges cannot give a perfect trial, nor are they required to do so. In this case the trial court rulings that were erroneous were few, and none fall in the category of reversible error. Therefore, we do not find any merit in Mr. and Mrs. Ferrell's claim of reversible trial court error as to evidentiary rulings. Two of those arguments deserve attention, however.
Plaintiffs claim that the jury responses to interrogatories were inconsistent because the jury found that Edward Ferrell was negligent, but that his negligence was not a proximate cause of the accident. La. C.C.P. art. 1813(E), states that when jury answers are inconsistent, the court shall not direct the entry of judgment, but may return the jury for further consideration, or may order a new trial. The trial court in this case entered a judgement on the verdict.
We have reviewed the record and conclude that while the jury answers may be inconsistent as to Mr. Ferrell, they are perfectly consistent as to Ms. Brown and Mr. Cranford. *1155 Inconsistency, if any, does not have any relation to, an error in the jury verdict as to Brown and Cranford. Error, if any, is harmless error as to plaintiffs.
Mr. and Mrs. Ferrell also claim the trial court erred when it instructed the jury on the "good samaritan" or "rescuer" doctrine. They claim Cranford was neither. In determining whether a jury charge is proper, the law is clear that the instruction must be a correct statement of the law, and that the instruction must be predicated upon the introduction of some evidence put forth in the case on that issue. Jackson v. West Jefferson General Hospital, 245 So.2d 724, 727 (La.App. 4 Cir.1971). Error on the trial court's part will only be found where there is no evidence which would permit the jury to make a finding on the issue. Hart v. Allstate Ins. Co., 426 So.2d 711, 714 (La.App. 1 Cir. 1982); Guerra v. Young Construction Co., 165 So.2d 882 (La.App. 4th Cir.1964), writ refused, 246 La. 864, 167 So.2d 676 (1964).
Cranford was clearly a rescuer in this case. Like the defendant in Chastain v. Allstate Ins. Co., 212 So.2d 243 (La.App. 2 Cir.1968) reh'g denied, Cranford stopped behind a vehicle involved in an accident which occurred moments before. Cranford, like Chastaine, put his lights on, and then walked forward to see if the parties needed any help. In Stevenson v. Delahaye, 310 So.2d 651, 654 (La. App. 1 Cir.1975), a rescuer was defined as someone who makes some effort or takes some action to protect the personal safety of another who was or appeared to be in imminent peril. Plaintiffs rely on Miller v. Carter, 346 So.2d 748, 751 (La.App. 1 Cir.1977), writ denied, 349 So.2d 1272 (La.1977), but we do not find that case analogous to these facts because in Miller there clearly was no immediate peril. Instead, Cranford could reasonably have believed that Brown was in imminent peril, and the trial court's instructions on the subject of a rescuer were not erroneous.
The trial court's instructions to the jury defined the "rescuer" doctrine, and told the jury they could consider whether Cranford was a "rescuer". The jury found Kimmie Cranford free of negligence.
Mr. and Mrs. Ferrell's argument that Mr. Cranford was negligent and liable is intertwined with his role as a rescuer. Unquestionably, a rescuer may be negligent and liable in some cases. Plaintiffs argue that Cranford was negligent by consciously, deliberately, and intentionally parking his car in the left lane of interstate travel, blocking interstate travel, failing to protect oncoming traffic, and failing to move his vehicle as soon as possible, in violation of R.S. 14:97. Mr. and Mrs. Ferrell rely on the case of Hryhorchuk v. Smith, 390 So.2d 497 (La.1980), on remand, 412 So.2d 197 (La.App. 3rd Cir. 1982), reh'g denied. In Hryhorchuk the Louisiana Supreme Court found that a rescuer was negligent because the rescuer parked his car squarely in the traffic lane facing the opposite direction even though the original vehicle was completely off the road. The facts of this case are different. The driver in Hryhorchuk had ample space in the median to park, but chose to stop in a traffic lane. Further, the rescuer did not have to block traffic because the endangered driver was off of the road. There was evidence in this case that Ms. Brown was not off of the road when Cranford stopped, and also evidence that Cranford's car would not have fit in the left median between the bridge and the left hand lane.
Cranford testified that Brown's car came to rest in the left hand lane, blocking his lane, and after he stopped his car, he had to push her car to the left "safety lane." He believed that to protect her the best course of conduct was to stop behind her and turn the hazard lights on.
The jury evaluated the testimony of Patrice Brown, Kimmie Cranford, Reid Noble, and Edward Ferrell. They based decisions of credibility and accuracy on what they saw, and they decided that Cranford acted prudently, reasonably, and not negligently.
An appellate court shall not set aside the findings of fact of a jury in the *1156 absence of manifest error or unless the findings of fact are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), reh'g denied. When the findings of the jury are "based on its decision to credit the testimony of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Rosell v. ESCO, 549 So.2d 840, 845 (La.1989). Recently, Stobart v. State of Louisiana, 617 So.2d 880 (La.1993), shows that the scope of appellate review of findings of fact is extremely limited. Considering the wide latitude given to jury findings and the limited scope of appellate review, we have no difficulty holding that the jury finding is not manifestly erroneous.
The most difficult question is Mr. and Mrs. Ferrell's claim that the jury was manifestly erroneous in finding that Patrice Brown was not negligent. Plaintiffs argue that Brown was negligent when she lost control of her car, initiating the subsequent chain of events. They also claim she was negligent by not taking action to protect other motorists after she crashed into the guard rail. In evaluating the negligence of a party the trial court applied the duty risk analysis which asks:
1. Was the conduct, act, or omission by the defendant a cause in fact of the plaintiff's harm?
2. Was there a duty on the part of the defendant, which was imposed to protect this plaintiff from this type of harm?
3. Did the defendant breach that duty?
4. Were there any damages?
As to cause in fact, the witnesses do not agree on every detail of the accident, but there is evidence in the record that Ms. Brown's vehicle was in the left hand emergency lane seven to fifteen minutes before Edward Ferrell's Toyota smashed into the police car. Hundreds of other cars successfully negotiated the bottle neck without incident until Edward Ferrell failed to do it. Certainly, on a pure "but for" test if it were not for Ms. Brown's loss of control of her vehicle, more likely than not, Mr. and Mrs. Ferrell would not have been injured. We likewise have no difficulty concluding that when Patrice Brown lost control of her vehicle this was a "contributing cause" of the ensuing collisions. If we were fact finders our findings would be different, and while we have no trouble finding that plaintiffs proved "cause in fact," the trial court left the issue to the jury and we cannot say the jury erred if it found Patrice Brown did not "cause" the accident.
We likewise have no difficulty finding Patrice Brown had a duty to maintain control of her vehicle, even in rainy weather. After she lost control she also had a duty to take all precautions possible to alert other motorist of the hazard she created. She could easily anticipate that another motorist would either hit her vehicle if it was blocking traffic or that the motorist would hit another vehicle by swerving to avoid her vehicle.
Whether Ms. Brown breached that duty is more a question of fact than law, and the trial court left that issue to the jury. The jury had an opportunity to hear Ms. Brown who explained she had problems with the Mazda's steering, had brought the Mazda to a mechanic for repair, and believed the steering problem was corrected. She testified that she could not control the vehicle when she reached the wet incline, and, consequently, it skidded into the left guard rail. The other view, more consistent with common sense, is that Ms. Brown reached the wet incline, and lost control of her vehicle because of "hydroplaning," meaning that ground water on the concrete highway prevented tire traction. Mr. Cranford, the good samaritan, said he believed he saw the vehicle hydroplane.
While we do not know the reasons behind the jury's finding that she was not negligent, we can only speculate that they believed loss of control of the vehicle was not due to Ms. Brown's negligence. In other words, there are two theories about why Ms. Brown lost control of her vehicle, and the jury apparently accepted Ms. Brown's.
As to the duty to warn or protect other motorists, Ms. Brown said she was dazed *1157 after the accident. She said the vehicle came to rest in the emergency lane, Cranford said he helped her push the Mazda into the emergency lane. When Officer Reid Noble arrived on the scene she found Ms. Brown in a dazed condition, out of her vehicle but standing in the emergency lane. She was faced with attempting to drive a damaged car which had just bounced off of a concrete rail. She barely had time to determine if she was injured or to decide how to move her automobile off of the highway across the rush hour traffic, when Cranford approached. Later, according to the testimony, Brown's car had to be towed from the scene because of extensive damage to the front fender and front wheel. Thus, the jury could conclude that in light of the choices Brown faced, she did not breach any duty to Ferrell. Again, the jury found Brown free of negligence, and we can only speculate the jury thought she did everything possible under the circumstances to protect other motorists.
Not one member of this panel agrees with the jury that Ms. Brown was not negligent when she failed to control her vehicle. Nevertheless, considering the scope of appellate review of facts in light of Rosell and Stobart, supra., we cannot reverse the jury finding that Patrice Brown was not negligent.
In conclusion, while this court does not agree with the jury's evaluation of cause in fact nor with the jury's evaluation of Ms. Brown's breach of duty, the jury engaged in the prescribed duty analysis, and found Brown not negligent. As stated before, we cannot substitute our views for the jury's view when there are two permissible views of the testimony and evidence.
AFFIRMED.
LANDRIEU, Judge, concurs in part and dissents in part.
I concur in the well reasoned opinion of the majority except to the extent that they affirm that portion of the judgment of the trial court which exonerates Ms. Patrice Brown from fault.
Ms. Brown's loss of control of her vehicle was a cause in fact of the accidents that followed and, although she offered an explanation, she produced no proof that the steering mechanism of her vehicle was defective.
In the absence of such proof, the jury was clearly wrong in not assessing some fault to her.

ON REHEARING
WARD, Judge.
Appellants, Mr. and Mrs. Edward R. Ferrell have filed a motion for rehearing and/or alternatively for rehearing En Banc predicated upon instances of factual inaccuracies in our opinion.
We have reviewed the opinion in light of appellants' assertions for rehearing and grant a limited rehearing for the express purpose of correcting two misstatements.
First, Mrs. Ferrell was not a guest passenger in her husband's vehicle at the time of the accident as we stated in paragraph 3 on page 2 of our opinion. Second, we more clearly specify that the jury did not have benefit of trial testimony from Ms. Brown but rather, had her deposition read to them. The jury decided to weigh Ms. Brown's testimony in favor of Kimmie Crawford. These factual corrections have no impact upon the law as applied to this case.
As for appellants' arguments that this Court "ignored" several specifications of error, our opinion indicates that appellants raised eleven assignments of error. All assignments were considered; however, as noted in the opinion, the assignments concerned evidentiary rulings over which the trial judge exercises much discretion. We found no abuse of discretion in the rulings and deemed the subject matters inappropriate for further discussion.
In all other respects, the opinion as originally written, remains unchanged.
LANDRIEU, Judge, dissenting.
For reasons previously assigned, I respectfully dissent.