650 So.2d 742 (1995)
Reva Spiegal, Wife of/and Edward FERRELL
v.
FIREMAN'S FUND INSURANCE CO., et al.
No. 94-C-1252.
Supreme Court of Louisiana.
February 20, 1995.
Rehearing Denied March 29, 1995.
*743 Frank J. D'Amico, Darla L. D'Amico, for applicant.
Frederick W. Bradley, Kathleen F. Ketchum, Liskow & Lewis, Robert M. Johnston, *744 Adams & Johnston, Joseph B. Landry, for respondent.
DENNIS, Justice.[*]
The multiple-vehicular accident in this case occurred on August 12, 1985 on I-10 East at the Read Road overpass in the early evening hours at dusk. The weather was rainy, with overcast skies, and visibility was poor, except for the well-lit overpass where the accident occurred.
Five vehicles were involved in this accidenta Mazda owned by Patrice Brown, a Chevrolet driven by Kimmie Cranford, a Ford LTD driven by police officer Reid Noble, a Toyota driven by Edward Ferrell, and a Cadillac driven by Antoine Paudice. A sixth vehicle, not described, with an unknown driver, allegedly was also involved.
Patrice Brown was driving home from work when she lost control of her Mazda on the incline of the I-10 overpass at Read Road. She claims the steering mechanism failed; other witnesses said the car "hydroplaned." She struck the left hand guard rail, spun around, and skidded in the left lane of I-10. She claims she came to a stop adjacent to the guard rail, out of the left lane, in the safety accident lane, facing oncoming traffic. The precise position of Brown's vehicle following the spin is in dispute.
Kimmie Cranford was traveling on I-10 behind Brown when he observed Brown's car swerve, strike the left hand rail, spin around and come to a stop facing oncoming traffic. Cranford says the Mazda stopped in the left hand lane, blocking traffic, not in the safety lane. He stopped his car in the left hand lane behind her car, put on his emergency signal, got out, and went to assist Brown. He helped push her car from the left lane to the emergency lane before a police car drove up and stopped behind his car.
Officer Reid Noble was driving her Ford LTD unmarked police car on I-10 when she observed traffic congestion on the Read Road overpass. She slowed down and stayed in the left hand lane when she observed Brown's Mazda stopped in the emergency lane facing oncoming traffic. Cranford's Chevrolet was stopped behind the Mazda, with the emergency lights on. She pulled her Ford LTD to a stop behind Cranford's Chevrolet, turned her emergency flashers on, and radioed headquarters that she was stopping to investigate an accident. All three vehicles were on the elevated portion of the overpass, and at least Cranford and Noble had their flashers on. When Noble found there was no personal injury, she told Brown and Cranford to move their vehicles if possible, so as not to cause an accident, and went back to her vehicle to report the situation. At that moment, an unidentified "phantom" vehicle swerved to avoid her LTD, skidded into the right lane guard rail, and continued down I-10.
Edward Ferrell was driving his Toyota with his wife as a passenger. While driving on I-10, he was behind a vehicle in the left hand lane, when that vehicle suddenly swerved to the right. When it swerved, he saw Noble's police car in front of him, but could not avoid hitting it. When he hit the police car, it was knocked forward into Cranford's Chevrolet. Ferrell's Toyota came to rest in the middle lane of I-10, where it was struck by Paudice's Cadillac.
Antoine Paudice was driving his Cadillac on I-10. When he saw Ferrell's Toyota stopped, blocking the middle lane of traffic, he could not avoid hitting it. Paudice's Cadillac smashed into Ferrell's Toyota. Paudice was injured, but not as severely as the Ferrells. Mr. and Mrs. Ferrell sued the drivers and insurers of the other five vehicles. Paudice sued the drivers and insurers of the others, including Ferrell, one of the plaintiffs in this lawsuit.
Prior to trial, the Ferrells settled their claims against Paudice, Noble, and the City of New Orleans. There remained for trial their claims against Brown and her insurer, Fireman's Fund, and against Cranford and his insurer, Liberty Mutual, and Enterprise Leasing who leased the car to Cranford. At the conclusion of trial, the jury found that *745 Brown and Cranford were not negligent, that Noble was negligent and was a proximate cause of the accident, that Ferrell was negligent but was not a proximate cause of the accident, and that Paudice was negligent and a proximate cause of the accident. The jury apportioned fault as follows: 0% to Brown and Cranford; 20% to Noble; 30% to the phantom; 30% to Ferrell; and 20% to Paudice.
In affirming the jury's findings, the Court of Appeal stated:
Recently, Stobart v. State of Louisiana, 617 So.2d 880 (La.1993), shows that the scope of appellate review of findings of fact is extremely limited. Considering the wide latitude given to jury findings and the limited scope of appellate review, we have no difficulty holding that the jury finding is not manifestly erroneous.
Ferrell v. Fireman's Fund Ins. Co., 635 So.2d 1152, 1156 (La.App. 4th Cir.1994). After reviewing the evidence presented at trial, the court again stated:
Not one member of this panel agrees with the jury that Ms. Brown was not negligent when she failed to control her vehicle. Nevertheless, considering the scope of appellate review of facts in light of Rosell [v. ESCO, 549 So.2d 840 (La.1989)] and Stobart, supra, we cannot reverse the jury finding that Patrice Brown was not negligent.
Ferrell, supra at 1157.
We granted certiorari because it appears that the appellate review standards were erroneously applied by the Court of Appeal and may have led to an incorrect result.
The Louisiana Constitution provides that the appellate jurisdiction of a court of appeal extends to law and facts. La. Const.1974, Art. V. § 10(B). This provision, resulting from Louisiana's history as a civilian jurisdiction, has been interpreted as giving an appellate court the power to decide factual issues de novo. The exercise of this power is limited, however, by the jurisprudential rule of practice that a trial court's factual findings will not be upset unless they are manifestly erroneous or clearly wrong. Nevertheless, when the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required, whenever possible, to redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840 (La. 1989); Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). See also, McLean v. Hunter, 495 So.2d 1298 (La.1986); Otto v. State Farm Mut. Automobile Ins. Co., 455 So.2d 1175 (La.1984); Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980); F. Maraist, The Work of the Louisiana Appellate Courts for the 1978-1979 TermA Faculty Symposium, Civil Procedure, 40 La.L.Rev. 761, 764 (1980).
In Rosell v. ESCO, 549 So.2d 840 (La. 1989), we synthesized the "manifest error" and "clearly wrong" appellate review of facts limitations that have been handed down by this court in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) and Canter v. Koehring, 283 So.2d 716 (La.1973) and the United States Supreme Court in Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), and United States v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948), as follows:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. * * * The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the findings in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between *746 them cannot be manifestly erroneous or clearly wrong. * * * In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Id. at 844-45 (citations omitted).
Our opinion in Stobart v. State, 617 So.2d 880 (La.1993), was not intended to change that synthesis or to make the scope of appellate review of facts any more limited than described in Rosell, Arceneaux, Canter, et al., supra. As we stated in Ambrose v. New Orleans Police Ambulance Service, 639 So.2d 216, 221 (La.1994), "it was not our purpose in [Stobart] to mandate that the trial court's factual determinations cannot ever, or hardly ever, be upset." Consequently, the Court of Appeal in the present case was mistaken in concluding that Stobart had further constricted the scope of review so as to make it "extremely limited." Ferrell v. Fireman's Fund Ins. Co., 635 So.2d 1152, 1156 (La.App. 4th Cir.1994).
Applying the correct appellate review precepts to the case at bar, we conclude that the jury correctly exonerated Kimmie Cranford of any fault because he acted reasonably as a rescuer under the circumstances. We agree with the Court of Appeal that:
Cranford was clearly a rescuer in this case. Like the defendant in Chastain v. Allstate Ins. Co., 212 So.2d 243 (La.App. 2 Cir. 1968) reh'g denied, Cranford stopped behind a vehicle involved in an accident which occurred moments before. Cranford, like Chastaine, put his lights on, and then walked forward to see if the parties needed any help. In Stevenson v. Delahaye, 310 So.2d 651, 654 (La.App. 1 Cir. 1975), a rescuer was defined as someone who makes some effort or takes some action to protect the personal safety of another who was or appeared to be in imminent peril. * * * Cranford could reasonably have believed that Brown was in imminent peril, and the trial court's instructions on the subject of a rescuer were not erroneous.
Ferrell, supra at 1155.
We find fault, however, with the Court of Appeal's affirmance of the trial court's finding that Patrice Brown was not guilty of negligence that was a cause in fact and a legal cause of the motor-vehicular accidents that followed. The normal burden of proof in a personal injury case is upon the plaintiff. However, in exceptional cases a presumption of negligence arises when a defendant motorist leaves his own traffic lane and strikes another vehicle. In such a case, the burden of proof on such a defendant motorist is to show that he was not guilty of any dereliction, however slight. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Simon v. Ford Motor Co., 282 So.2d 126 (La. 1973); Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957). This burden of proof is imposed because "it seems only reasonable ... that a motorist owes ... the duty of remaining in his own lane ..." Rizley, supra at 663, 95 So.2d at 142.
By the same token, we conclude that Patrice Brown owed a duty of remaining in her own lane of traffic, controlling her vehicle, and preventing it from leaving her own traffic lane and colliding with the bridge railing. Consequently, the burden of proof is on Patrice Brown to show that she was not guilty of any dereliction, however slight, that *747 caused the subsequent accidents that are the subject of this case.
We conclude that Patrice Brown failed to carry her burden of proof to exculpate herself from negligence factually and legally causing the accidents because the objective facts contradict her story and the story itself is internally inconsistent and implausible on its face. We agree with the Court of Appeal that Patrice Brown violated her duty to maintain control of her vehicle, even in rainy weather, and that after losing control she also violated her duty to take all precautions possible to alert other motorists of the hazard she had created. Ferrell v. Fireman's Fund Ins. Co., 635 So.2d 1152, 1156.
Patrice Brown's efforts to blame her loss of control upon a defective steering mechanism are not convincing because she relied only on her own deposition testimony to this effect. A person claiming such a latent defect defense is required to come forward with objective and convincing evidence, other than her own testimony, against which her degree of innocence of fault may be measured. King v. Louviere, 543 So.2d 1327 (La.1989); Simon v. Ford Motor Co., 282 So.2d 126 (La.1973). The testimony of other witnesses that Patrice Brown reached the wet incline and lost control of her vehicle because of "hydroplaning", meaning that ground water prevented tire traction, does not exculpate her from negligence because she had a duty to maintain control of her vehicle under the inclement, but not extraordinary, weather conditions.
Because the Court of Appeal failed to correct the jury's clearly wrong finding that Patrice Brown was not negligent, it did not reach the error of law created by the jury's inconsistent responses to interrogatories. La.C.C.P. Art. 1812(C) directs the jury to attribute a percentage of fault to a party only after it has determined that such party is negligent and that this negligence was a legal or proximate cause of the accident. However, the jury in this case found that Edward Ferrell was negligent and 30% at fault in the accident, but that his negligence was not a legal or proximate cause of the accident. La.C.C.P. Art. 1813(E) mandates that when jury answers are inconsistent, the court shall not direct the entry of judgment, but may return the jury for further consideration, or may order a new trial. See Daigle v. White, 544 So.2d 1260 (La.App. 4th Cir. 1989). The trial court in the present case followed neither prescribed course but entered a judgment on the verdict.
Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. McLean v. Hunter, 495 So.2d 1298 (La.1986); Picou v. Ferrara, 483 So.2d 915 (La.1986); Suhor v. Gusse, 388 So.2d 755 (La.1980) and cases cited therein. This court determined that the trial court committed a legal error which may have interdicted the fact-finding process; therefore, we remand this case to the Court of Appeal for it to complete this de novo review. Because we have already determined that Patrice Brown was guilty of some degree of negligence in causing the accidents while finding that Kimmie Cranford was properly exculpated, the Court of Appeal should first determine whether Edward Ferrell was guilty of any negligence that was a legal or proximate cause of the accident and, if so, assign the proper percentage of fault to him. After doing so, the Court of Appeal should recalculate the respective percentages of fault of the phantom, Noble, and Paudice and enter whatever judgment is appropriate in the case.
For the reasons assigned, the Court of Appeal judgment is affirmed in part, reversed in part, and remanded to that court for further proceedings in accordance with the opinion of this court.
AFFIRMED IN PART; REVERSED IN PART; REMANDED TO THE COURT OF APPEAL FOR FURTHER PROCEEDINGS.
LEMMON, J., concurs.
NOTES
[*] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice Pike Hall, Jr.

Pursuant to Rule IV, Part 2, § 3, Calogero, C.J., is not on the panel which heard and decided this case.