hWALTZER, Judge.
STATEMENT OF THE CASE
This is a suit for property damage and personal injuries arising out of an automobile accident that occurred on 25 June 1983 in New Orleans. The case was originally tried to a jury. During the course of that trial, the trial judge granted a directed verdict on the issue of liability and the jury returned a verdict of $9,000 to compensate plaintiff for his personal injuries and special damages. Plaintiff timely filed a rule *168 for additur or in the alternative for a new trial pursuant to La.C.C.P. art. 1814. Defendants opposed the rule.
After having taken the matter under advisement, the trial judge rendered judgment for plaintiff in the amount of $19,000. The trial court found that plaintiff fired intervenors, his prior attorneys, without cause, and included in the $19,000 an award to the attorneys of $7,600.
12Plaintiff appealed and defendants answered the appeal. This Court reversed the trial court’s additur, affirmed the trial court’s finding that intervenors were entitled to their fee, and remanded the case for a new trial.[1]
Defendants moved to set the remanded case for trial on 12 October 1997. The case was pre-tried and a settlement conference was held on 24 March 1998. The trial judge signed a jury trial order pursuant to La. C.C.P. art. 1734 on 16 January 1998. On 24 June 1998, plaintiff filed a “Rule for Judgment on the Pleading”. The text is substantially incoherent and refers to various issues surrounding an attempt by plaintiff to recuse the trial judge that is not part of the record on appeal. The “Rule” also suggests that defendants’ motion to dismiss the earlier appeal “serves as a confession and admission, and truth of plaintiffs allegations and demand.” Plaintiff cites no authority for this contention. In his supporting brief, plaintiff contends that Catherine Melan-con’s guilty plea in traffic court admits liability in the civil case, and that the statement in the Allstate accident report that “Insured ran a stop sign and struck the claimant’s vehicle” together with defendants’ dismissal of their appeal, constitutes admission of liability. Plaintiff also claimed entitlement to punitive damages. The plaintiffs supporting affidavit is replete with allegations that defendants “bought” plaintiffs attorneys, conspired to sell his car under false pretenses[2], “plotted and sabotaged |3him into poverty” and unduly “influenced” doctors’ reports. The affidavit also makes claims of forgery and material alteration of the plaintiffs insurance policy.
Defendants filed an opposition to the “Rule” seeking sanctions, citing the trial court’s judgment of 18 July 1995. Ultimately, the “Rule” was denied. According to the 1995 judgment:
1. Since the Court of Appeal did not except the liability issue in its remand order, liability is an issue to be decided by the trier of fact.
2. Because plaintiff executed a subro-gation agreement[3] in favor of his collision insurer, he no longer has a right to pursue at trial a claim for property damage in excess of his policy deductible.
3. Unless plaintiff can produce a timely filed petition alleging conspiracy to deprive him of his vehicle, he is prohibited from raising a conspiracy theory at trial.
4. Plaintiff will not be allowed to amend his petition. The suit was filed in 1984, the case proceeded to jury trial, appeal and remand. The matter was pre-tried and cut-off dates were selected by the parties.
5. Plaintiff has no claim for punitive damages against defendant for having *169 failed to settle his claim. At the time of the accident and the filing of the suit, the law did not provide for such damages.
6. Any exhibit not filed by 20 July 1995 (the previously set cut-off date) will not be admitted into evidence. The exchange and filing of exhibits had been 14provided for in the trial order signed by the parties. The court found this to essential for the orderly conduct of the trial.
7. The court denied plaintiffs motion to compel intervenors, his former attorneys, to produce documents relating to the settlement of their intervention. The court found these documents were irrelevant, and that defendant settled the intervention after the case was appealed.
8. Plaintiff was precluded from discovering the terms of the intervention settlement or discussing that settlement before the jury. The settlement was deemed irrelevant and possibly confusing to the jury.
9. Defendants were ordered to search their records for all policies issued to the Melancons in order to establish the insurance policy limits.
There is no indication in the record that any party appealed from that judgment.
Trial was set for 16 September 1998. On 7 July 1998, defendants filed a request for jury trial, noting that plaintiff withdrew his jury request. Plaintiff filed an “Exception to Defendant’s Request for Jury Trial”, contending that there were no contested issues of fact to be tried.
The matter was tried to the Court on 16 September 1998. By judgment of 28 October 1998, the trial judge awarded plaintiff general damages of $30,000, medical special damages of $5,128.06 and rental costs of $1,000. Plaintiff filed a Rule for Addi-tur or Alternatively for New Trial on 5 February 1999, which the trial court denied on 18 February 1999. From the judgment of 28 October 1998, [^defendants filed a suspensive appeal on 5 March 1999. Plaintiff answered the appeal seeking to increase the damage award to $1,052,840.64 and seeking sanctions for frivolous appeal.
We reverse the judgment of the trial court, find no basis for imposition of sanctions against defendants and render judgment in favor of defendants, dismissing plaintiffs suit at plaintiffs cost.
STATEMENT OF FACTS
Plaintiff testified that he was injured on 25 June 1988 when a car driven by Mrs. Catherine Melancon ran a stop sign and hit his 1980 Pontiac. He hit his head on the windscreen and received a concussion and injuries to his neck, arm and back. He also complained of a knot or spasm in his right leg, cervical injury (whip lash) and a bulge along his cervical spine. He testified from unauthenticated bills that he paid Mercy Hospital $125 for ambulance service and $447.50 for radiology. He testified that Dr. David Jarod treated him for two months, and charged him $250. He prescribed drugs but did not give him any kind of physical therapy. He testified that his prescription expenses were $12.05, $7.37 and $12.09.
Plaintiff testified that he saw plastic surgeon Dr. Gustavo Colon, who treated the scar on his head. Dr. Colon charged plaintiff a total of $140 for his services. Plaintiff also saw Dr. Flemback, a chiropractor, who treated him for neck and back pain from June, 1984 to March, 1985 and billed him $2,392 of which at most $1,640 could have been paid.
| ^hereafter, he saw orthopedist Dr. Windsor Dennis, who took x-rays and prescribed drug treatment, charging $515 for his initial treatment. Plaintiff testified that he paid $17.29 and $6.49 for the prescription drugs. Radiologist Dr. Robin Hadad charged $285 for additional x-rays and treatment. Plaintiff testified that Dr. Dennis referred him to Cary Glenn for an EMG, for which he was charged $182. Plaintiff testified that he has felt pain since the accident.
*170 Plaintiff attempted to testify to medical expenses incurred in 1995 at Touro Infirmary and West Jefferson Hospital. This information was not admitted, since it had not been provided to defendants pursuant to the pre-trial order.
Plaintiff provided no medical testimony connecting any of the foregoing medical bills to the alleged injuries caused by the accident. The trial judge reminded plaintiff that he had been told repeatedly that the trial would be held as scheduled and that he would need to subpoena his witnesses. The judge noted that plaintiff ignored this advice and failed to subpoena any medical witnesses.
Plaintiff testified that he incurred rental costs of $3,360 from June to December for a nine-year old Pinto automobile, a rate of $500 per month. Elsewhere in his testimony, he said the rental fee had been $6,000. He testified that he rented the car from an individual, not from a rental agency, but he did not bring into Court the person from whom he allegedly rented the car or documentary proof of payment of either of the amounts to which he testified.
Plaintiff testified that he missed work during that time. He admitted that he was not employed at the time of the accident, but was a full-time student with self-17described immigration problems that prevented him from working since May, 1983. He claimed $18,000 loss of income, $3,954 loss of earning capacity and future loss of income and incapacity of $14,150. None of these figures was supported by documentary or expert testimony. Plaintiff also testified that he would need $200,000 to compensate him for “over fifteen years of pain and suffering”, and “more than $200,-000” to get neck, back and hip replacement surgery. Again, he presented no evidence to support these figures, the likelihood that his pain would continue for fifteen years or the necessity for future surgery.
On cross-examination, plaintiff admitted that he was involved in additional accidents on 9 May 1991 and on 30 September 1991 for which he sought medical treatment and filed suit in 24th Judicial District Court, neither of which referred to the existence or aggravation of the alleged 1983 injuries. He also filed suit for $3,000,000 against his employer for injuries allegedly sustained to his arm and thumb in a shoplifting incident in 1994. The trial judge refused to admit evidence of this suit, deeming it irrelevant to plaintiffs back and hip pain complaints.
Catherine Melancon testified that at the time of the accident, she had come to a complete stop, at the stop sign controlling her lane of traffic. Believing that the cross traffic lane was also controlled by a stop sign, she thought the cross traffic would stop and yield to her. In that belief, later proved to be erroneous, she entered the intersection and the left front panel of her car was struck by plaintiffs car. She subsequently learned that the cross traffic was not subject to a stop sign and had the right of way.
J^FIRST ASSIGNMENT OF ERROR: The trial court erred in awarding plaintiff a sum greater than $20,000 after having stricken the defendant’s jury request based upon a finding that the value of plaintiffs claim was below the jurisdictional requirement for jury trial.
In light of our disposition of the second and third assignments of error, this assignment of error is moot.
SECOND AND THIRD ASSIGNMENTS OF ERROR: The trial court erred in denying defendants’ Motion for a Directed Verdict and in awarding $30,000 general damages, $5,128.06 medical damages and $1,000 for car rental where plaintiff failed to introduce medical testimony or other evidence of his injuries or evidence that he in fact paid to rent a car.
We are instructed that before a fact-finder’s verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong. Lewis v. *171 State, Through Dept. of Transp., and Development, 94-2370 (La.4/21/95), 654 So.2d 311, 314; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Although we accord deference to the factfinder, we are cognizant of our constitutional duty to review facts[4], not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police 9 Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745.
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
Our careful review of the record in its entirety convinces us that the trial court was not manifestly erroneous or clearly wrong in finding Mrs. Melancon to have been negligent and in finding that negligence to have been a legal cause of the accident. However, we are convinced that the judgment below is manifestly erroneous insofar as it makes an award of special and general damages to the plaintiff.
A plaintiff in a personal injury action has the burden of proving by a preponderance of the evidence that his injuries were caused by the accident of which he complains and the extent of his injuries. The plaintiffs testimony in the instant case is clearly inadequate to support this burden of proof. The testimony was internally inconsistent, argumentative, and replete with unsubstantiated charges of conspiracy and malicious conduct on the part of defendants.
Despite having signed the trial order, and with full knowledge of the trial date and of the necessity to subpoena his witnesses, plaintiff chose not to issue any subpoenas or call any witnesses except Mrs. Melancon and himself, relying instead on his own affidavit, submitted in connection with a “Rule for Judgment on the ImPleading” (in effect a Motion for Summary Judgment) in an attempt to clothe the various hearsay medical records with authenticity. The trial court correctly disallowed this proffered “evidence.” However, in awarding damages based on nothing but the plaintiffs bald claims, the trial court implicitly accepted such “evidence”. This constitutes clear, manifest error.
In the interest of judicial economy, we have reviewed the entire record and, for the reasons set forth infra, find that plaintiff proved negligence on the part of Mrs. Melancon that caused the accident, but he failed to sustain his burden of proving entitlement to damages. Since the record is complete, this court will make a de novo review of the record and determine the preponderance of the evidence. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
Because of the lack of any credible, admissible medical evidence linking plaintiffs alleged injuries to the accident in question, we must resort to certain legal presumptions. The plaintiff has the benefit of the presumption that his injuries were caused by the accident if he can establish that before the accident he was in good health, but from the time of the accident, the plaintiffs symptoms appeared and thereafter continually manifested themselves. In the instant case, the plaintiff has produced no evidence that he was free of his complaints prior to the accident. He did not produce the treating physicians who could have testified to his pre-accident and post-accident conditions. *172 Furthermore, plaintiffs testimony does not reflect treatment on a continuing basis by any of the doctors he claims to have seen.
InThis Court recognizes the basic principle that defendants in a personal injury suit have a right to cross-examine the plaintiffs treating physician and medical experts. See, Barre v. Bonds, 99-1806 (La.App. 4 Cir. 5/10/2000), 763 So.2d 60. Plaintiffs failure to produce his alleged treating physicians denied defendants this right.
Closely related to the foregoing principle is the legal presumption that where plaintiff fails to provide a sufficient explanation of his failure to introduce the testimony of a treating physician, it is presumed that this testimony would have been adverse to the plaintiffs case. D’Angelo v. New Orleans Public Service, Inc., 405 So.2d 1262, 1269 (La.App. 4 Cir.1981), writ denied 407 So.2d 748 (La.1981).
Plaintiffs testimony is unclear as to which, if any, of the alleged medical bills he paid. He produced no proof of payment, and the bills themselves were properly excluded by the trial court as inadmissible hearsay.
The testimony concerning his alleged rental of a substitute vehicle for a period of six months is likewise incredible. Plaintiff did not introduce the person from whom he allegedly rented the nine-year-old Pinto, nor did he introduce supporting documentation of the rental. We characterize plaintiffs contention that he paid either $500 per month or $1,000 per month (depending on which of his versions we accept) in 1983 to have the use of a nine-year-old Pinto automobile as totally unworthy of belief. There is absolutely no support in the record for the trial court’s award of $1,000 for car rental.
h ¡/Based on this paucity of evidence, the trial court erred in failing to grant defendants’ motion for judgment at the conclusion of plaintiffs case.
PLAINTIFF’S ANSWER TO APPEAL
For the reasons set forth in our discussion of the second and third assignments of error, we find no merit in plaintiffs request for additur. The allegation contained in the plaintiffs answer to appeal that the trial date setting was unclear and confusing is not supported by the record. CONCLUSION AND DECREE
For the foregoing reasons, the judgment of the trial court is reversed. Plaintiffs claim against Ronald and Catherine Me-lancon and Allstate Insurance Company is dismissed with prejudice. Costs are assessed against plaintiff.
REVERSED AND RENDERED.
^J^ORDER
Appellee, Dodiyi William West, acting pro se, filed in this court a pleading entitled “Request for Clarification & Full and Complete Written Opinion.” Because there is no provision in the Code of Civil Procedure authorizing such a pleading in this Court, we have considered Appellee’s Request as a Motion for Rehearing.
Appellee’s “Request for Clarification & Full and Complete Written Opinion” or Motion for Rehearing is DENIED.
New Orleans, Louisiana this 19th day of December 2000.
/s/ Miriam G. Waltzer
/s/ JUDGE MIRIAM G. WALTZER
/s/ Robert J. Klees
/s/ CHIEF JUDGE ROBERT J. KLEES
/s/ William H. Byrnes III
JUDGE WILLIAM H. BYRNES III

. This summary of the case history is taken from this Court’s opinion in West v. Melancon, 507 So.2d 1250 (La.App. 4 Cir.1987), writ denied, 514 So.2d 128 (La.1987), reconsideration denied, 515 So.2d 442 (La.1987). The record on appeal contains no pleadings filed below prior to 26 April 1998.

. Plaintiff testified that Metairie Motors, to whom he look his car for repair, allegedly sold the car without his approval as part of a conspiracy with defendant Allstate. However, plaintiff did not make Metairie Motors a party to this suit by original or supplemental/amending petition.

.Plaintiff sought to characterize his collision insurer’s payment of $1735.79 as a loan. However, defendant introduced the subrogation agreement dated 1 June 1984 as proof of the collision settlement. That agreement makes no mention of a “loan” of any kind by the insurer to plaintiff.

. See, LSA-Const. Art. 5, section 10(B).