TOBIAS, J.,
concurs and assigns reasons.
| i Where a discrepancy exists between the judgment and the reasons for judgment, the judgment prevails; or stated *887 another way, the reasons for judgment do not control and form no part of a trial court’s judgment from which an appeal is taken. Jim Walter Homes v. Long, 02-0950, p. 3 (La.App. 4 Cir. 12/18/02), 835 So.2d 877, 878-79; Perkins v. Willie, 01-0821, p. 5 (La.App. 1 Cir. 2/27/02), 818 So. 167, 171; see also La. C.C.P. art. 1918. As was said by the Fifth Circuit in Leonard v. Favaloro, 05-206, pp. 6-7 (La.App. 5 Cir. 10/6/05), 916 So.2d 1191, 1194:
Under the circumstances, we are compelled to make a monetary award to plaintiff. In granting this award, our review is not limited by the jurisprudential rule that a trial court trier of fact’s factual findings will not be overturned absent a finding that they are manifestly erroneous or clearly wrong. See; [sic] Ferrell v. Fireman’s Fund Insurance Co., et al, 94-1252 (La.2/20/95), 650 So.2d 742. When, as here, the trial judge has made no award of damages, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Lasha v. Olin Corp., 625 So.2d 1002 at 1006 (La.1993). In compliance with the above, we have conducted a de novo review of the record for damages.
In the case at bar, the trial court’s judgment literally reads in pertinent part as follows:
12WHEN, after considering the pleadings, testimony, evidence, law, and argument of counsel, the Court finds the law and argument to be in favor of Plaintiffs, J.R.A. Incorporated and Allen R. Jae-ger, for reasons set forth in the accompanying Reasons for Judgment.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment be rendered in favor of Plaintiffs, J.R.A. Incorporated and Allen R. Jae-ger.
JUDGMENT READ, RENDERED, AND SIGNED at New Orleans, Louisiana on this the 16th day of December, 2009. [Emphasis in original.]
This judgment is materially defective. First, Mr. Jaeger has no right of action as noted by the majority. Second, no one is named as a defendant against whom the judgment is rendered. Third, no amount is awarded to the plaintiffs; thus one cannot execute upon the judgment.
We are required to address the issue of no right of action specifically because the trial court rendered judgment in favor of both J.R.A. and Mr. Jaeger. The Essex insurance policy lists “J.R.A., Inc.” and “Jaeger Seafood” as named insureds and Mr. Jaeger was not individually doing business as Jaeger Seafood. Mr. Jaeger was the sole stockholder of J.R.A., Inc. We are required to notice on our own motion that Mr. Jaeger has no right of action and amend the judgment accordingly. La. C.C.P. art. 927 B; La. C.C.P. art. 2129; Merrill v. Greyhound Lines, Inc., 10-2824, p. 1 (La.4/29/11) 60 So.3d 600.
It is readily apparent to me from a reading the reasons for judgment entered on the same day of the judgment that the trial court intended to render judgment against Essex Insurance Company for damages equal to the full policy limits, less amounts previously paid by Essex, plus judicial interest and costs. I come to this conclusion from the trial court’s statements therein as follows:
Defendant maintains that J.R.A.’s argument that wind was the sole cause of the loss must be disregarded since Plaintiff collected $902,900 from FEMA through the “NFIP”.
[[Image here]]
|s[T]he Court finds the Defendant is liable for the damages that resulted from Hurricane Katrina’s wind forces. In *888 reaching this conclusion, the Court relied upon the testimony of all experts as to what event caused plaintiffs damages: wind forces or flood. The Court took into serious consideration the testimony of plaintiffs meteorologist expert, John S. Cordero. During the trial, Mr. Cordero testified that he relied on no less than twelve local and national weather sources to calculate and reconstruct the timeline and extent of Hurricane Katrina’s force winds. Mr. Cordero opined that severe winds, far in excess of hurricane forces, impacted the plaintiffs properties at least nine hours before the flood surge.
Interestingly, the Court finds that none of the defendant’s experts could state that 100% of the damages sustained to the plaintiffs properties and the contents therein (or anything in the immediate vicinity) were caused solely by flood waters. As a matter of fact, the written report submitted by Kevin Vanderbrook, P.E., defendant’s first expert civil engineer, indicated that the roof of one of the properties was torn off by wind forces not flood. Furthermore, Vanderbrook’s report stated that it was not possible to determine what damage was caused by wind versus flood waters. Defendants [sic] made a valiant attempt to demonstrate that only a small percentage of plaintiffs’ damages was due to wind forces. However, defendants [sic] proof did not rise to the level of “more likely than not.”
In light of the above, the Court finds that on or around August 29, 2005 the plaintiffs’ properties located at 1928 and 1904 West End Park were damaged by wind and rain forces which preceded the flood surge sustained by the properties. Therefore, defendant is liable for Hurricane wind related damages to the properties and its [sic] contents.
For these reasons, the Court renders judgment in favor of Plaintiff, J.R.A. Incorporated, and against Essex for both properties (1928 West End Park and 1904 West End Park) in the amount of $565,914.58 for property losses plus legal interest and costs. In reaching this judgment value, the Court calculated the total policy limits on both properties ($700,000), less the payments already made by Essex ($127,085.42), less deductible ($5,000).
As to plaintiffs’ claim for Business Personal Property loss, neither side disputes that the total loss on 1928 West End Park exceeds the $100,000 policy limit. The same holds true for Business Person Property loss at 1904 West End Park. At that location, the Business Personal Property loss exceeds the $10,000 policy limit. Thus, the plaintiffs are only entitled to recover $110,000 total for the Business Personal Property loss.
Implicit in the foregoing when read as a whole is the following:
|4(1) the trial court believed that the National Flood Insurance Program overpaid J.R.A. for flood-related damages;
(2) the trial court believed that the windstorm damages were sufficient to require the payment of the policy limits regardless of the co-insurance clauses, as discussed infra;[1]
(3) the trial judge relied heavily on Mr. Cordero’s testimony relating to wind velocities; and
(4) although water caused some damage, it was more likely that wind caused most of the damage.
*889 The trial court’s decree neither awards anything to any plaintiff nor condemns the defendant to pay anything to any plaintiff in spite of the fact that the reasons for judgment given by the trial court imply that an award is being made. My interpretation of the intent of the trial court was to award J.R.A., Inc. the policy limits of each policy in the respective amounts of $600,000 for the 1928 West End Park building and $100,000 for the contents of that building and $100,000 for the 1904 West End Park building and $10,000 for the contents of that building, subject to a credit of the amounts previously paid by Essex and taking into account the deductible under the policy. I would prefer to formally amend the trial court’s judgment accordingly, although the remand to the trial court to formally issue a new judgment is well within this court’s discretion.
In pertinent part, the Essex insurance policy provides the following relative to coinsurance:
1. Coinsurance
If a Coinsurance percentage is shown in the Declarations, the following condition applies.
|fia. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the declarations is greater than the Limit of Insurance for the property.
Instead, we will determine the most we will pay using the following steps:
(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;
(2) Divide the Limit of Insurance of the property by the figure determined in step (1);
(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in step (2); and
(4)Subtract the deductible from the figure determined in step (3).
We will pay the amount determined in step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other Insurance or absorb the loss yourself.
[[Image here]]
If one makes the calculations using the formula provided in the policy and making appropriate assumptions relating to windstorm damage, the co-insurance clause results in Essex as being required to pay policy limits. That is, if most of the damage is due to windstorm, the calculation results in policy limits being due by Essex to J.R.A., Inc. Based upon the record, the trial court’s conclusion is neither manifestly erroneous nor clearly wrong.
Insofar as whether this court is required to conduct a de novo review, I find that one is not required in this case because it is readily apparent from reading the trial court’s judgment that the omissions in the actual judgment rendered by the trial court are in the nature of clerical errors, and not one where a variation was intended between the judgment and the reasons for judgment. Even if one were to conduct a de novo review, I cannot say that the majority’s determination that J.R.A. is entitled to policy limits is wrong, although I might believe otherwise.
I respectfully concur.

. One might even assume that the trial court believed that the pre-storm valuations of the structures and contents were significantly less than the values testified to.