Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,470-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSIONS OF EDDIE LUTHER NEAL
AND BUNNY LUVENIA NEAL

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 20230877

Honorable Jefferson Bryan Joyce, Judge

* * * * *

| | |
|---|---|
| LAW OFFICES OF MARY ALICE BRYANT By: Mary Alice Bryant | Counsel for Appellant, Succession of Patrick Deon Neal |
| BRITTON LAW FIRM By: George W. Britton, III | Counsel for Appellees, Successions of Eddie Luther Neal and Bunny Luvenia Neal; and Raven Lenore Neal-Goins |

* * * * *

Before PITMAN, COX, and ROBINSON, JJ.

**COX, J.**

This suit challenging the validity of Bunny Neal's testament arises out of Ouachita Parish, Louisiana.  Bunny's son, Patrick Neal, contested the testament and argued the trial court should apply Louisiana law.  The trial court ruled the testament is valid under Texas law.  Patrick's Succession now challenges this ruling on appeal.  For the following reasons, we reverse the trial court.

**FACTS**

Eddie and Bunny Neal were married and had three children: Patrick Neal, Harold Neal (who predeceased his parents and did not have children), and Raven Neal Goins.  Eddie died intestate on July 12, 2020.  Bunny died on October 15, 2022.

On March 9, 2023, Raven filed a petition to file and execute a notarial testament and designate petitioner as administrator of the Successions of Eddie Luther Neal and Bonny Luvenia Neal.  Raven alleged that Bunny "left a last will and testament in notarial form, attested to before a Texas Notary Public, Notary Public Jon C. Owens, and two competent witnesses dated the 22nd day of March, 2022 in the County of Ellis, State of Texas."  She stated, "The execution of the will is in compliance with the Louisiana and Texas prerequisites of a statutory testament."  Raven attached the nine-page testament to her petition.

On September 5, 2023, Patrick filed a petition to annul Bunny's last will and testament on the basis that it is fraudulent and fails to meet statutory compliance.  Bunny signed the testament while in Louisiana.  Raven then took the testament home with her to Texas, where she found a Texas notary and witnesses to sign the testament.

On June 24, 2024, a hearing was held on the validity of Bunny's testament. Sansulan Pine testified that she was a witness to the testament. When asked if she signed in the presence of the Bunny, she replied, "What do you mean presence, because at the particular time, it was during Covid… she was very sick and couldn't travel. It was like the video call was done[.]" Raven's counsel then asked if the other witness was present at that time and if the testament was executed "under the presence of a notary." She responded "yes" to both questions.

On cross-examination, Ms. Pine explained:

> [Bunny] had already signed the document and -- and when the video call was done then, of course the [notary] guy was asking her, can I go over it -- can I look over it first and make sure that everything looks good, you know, before it *(sic)* sign it and he went over it with all of us and asked us if we had any questions about it and asked [Bunny] if she had any questions about it and she agreed and she does this proceed *(sic)* pretty much.

Ms. Pine clarified that Bunny had already signed the document that the notary had in his possession. She stated that she, the other witness, and the notary were all at Raven's house on a video call with Bunny.

Christine Bradford testified that she also witnessed Bunny's testament. She testified that she was at Raven's home on a video call with Bunny; the notary read the document; Bunny stated it was her signature on the document; and they all signed. She stated on cross-examination that she was not there at the same time as Ms. Pine; Ms. Pine had already been at the house. Ms. Bradford did not recall whether Ms. Pine signed the testament before she signed, but she knew that Bunny had already signed the testament. When questioned by the trial court, she thought more about whether Ms. Pine was at Raven's house at the same time she was there and stated, "So, I think, yeah, she may have -- may have been there."

2

After Ms. Bradford's testimony, the hearing was continued until September 27, 2024, at which time Raven testified. She stated that she was with her mother at her mother's house when she signed the testament. Raven testified that they were unable to get the testament notarized the day it was signed, so she agreed to take it with her to Texas to see if she could get it notarized without her mother being present. Raven stated that she found a notary who explained that he could notarize via Skype, as the Texas rules had changed after Covid. She testified that both witnesses were present from the beginning of the Skype call; the notary read the pages to Bunny; Bunny agreed that she had signed the testament; the witnesses signed; the notary signed; and then, the notary explained to Bunny a process to "void" the testament.

On November 21, 2024, the trial court signed its judgment and found the testament valid. Patrick's petition was dismissed with prejudice, and the estate was ordered to be distributed in accordance with the terms of the testament. In its written reasons for judgment, the trial court found that the testament was notarized in Texas and satisfied all formal requirements of Texas law.

Patrick passed away on November 29, 2024, and appointed his attorney, Mary Alice Bryant, as executrix and trustee of his testamentary trust. Patrick's Succession has been substituted as a party and now appeals.

**DISCUSSION**

Patrick's Succession first argues that the trial court erred in determining Texas law applied to this case. The trial court determined that because the testament was notarized in Texas, Texas law applied. Patrick's

3

Succession asserts that Louisiana law should apply, which would render the testament invalid.

In testament contest cases, absent a finding of manifest error, the factual findings of the trial court are accorded great weight and will not be disturbed on appeal. *Succession of Moore*, 54,338 (La. App. 2 Cir. 3/30/22), 339 So. 3d 12, *writ denied*, 22-00973 (La. 10/4/22), 347 So. 3d 859. However, "[w]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence." *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So. 2d 742.

The trial court relied on La. C.C.P. art. 2888, which states:

A written testament subscribed by the testator and made in a foreign country, or in another state, or a territory of the United States, in a form not valid in this state, but valid under the law of the place where made, or under the law of the testator's domicile, may be probated in this state by producing the evidence required under the law of the place where made, or under the law of the testator's domicile, respectively.

Bunny signed her testament while physically located in Louisiana, all her property is in Louisiana, and Bunny was domiciled in and a resident of Louisiana. The only connection to Texas is that the testament was later taken to Texas to be notarized by a Texas notary.

Under La. C.C.P. art. 2888, the testament needed to be subscribed by and made in Texas. Bunny did not subscribe, or sign, her testament in Texas. Bunny did not make her testament in Texas. Bunny was located in Louisiana when she made and signed her testament. Therefore, the trial

4

court erred in applying La. C.C.P. art. 2888. Louisiana law applies to determine the validity of Bunny's testament.

The validity of a testament should be maintained through the liberal construction and application of the codal articles, instead of a strict interpretation, if there is substantial compliance with the codal provisions. *Succession of Bruce*, 20-239 (La. 1/27/21), 315 So. 3d 193.

Louisiana recognizes two types of testaments, olographic and notarial. Bunny's testament purports to be a notarial testament. At the time the trial court ruled on the merits of the testament, La. C.C. arts. 1576, *et seq.* governed the requirements of a notarial testament.[1] La. C.C. art. 1576 stated, "A notarial testament is one that is executed in accordance with the formalities of Articles 1577 through 1580.1." La. C.C. art. 1577 stated the following:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his

---

[1] The Louisiana Legislature revised the requirements for a notarial testament in Act 30 of the 2025 Regular Session, effective August 1, 2025. The Legislature removed the requirement that the testament be signed on each and every page to be a valid notarial testament. However, a notarial testament must still be "executed before a notary public in the presence of two witnesses[.]"

Section 4 of Act 30 provides:

The provisions of this Act shall apply both prospectively and retroactively and shall be applied to all claims existing and pending on the effective date of this Act and all claims arising or actions filed on and after the effective date of this Act. The provisions of this Act shall not be applied to revive claims prescribed as of the effective date of this Act or *to affect claims adjudicated on the merits by a final and definitive judgment prior to the effective date of this Act.* (emphasis added).

Because the merits of this case were adjudicated by a final and definitive judgment before August 1, 2025, the prior law applies, which required Bunny to sign her testament on each page.

testament and shall sign his name at the end of the testament and on each other separate page.

(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this _____ day of _____, _____."

Raven does not dispute that Bunny's testament is not signed on each page but asserts that it is not required under Texas law. We have determined that the validity of the testament must be decided under Louisiana law. The lack of Bunny's signature on each page does not qualify as substantial compliance with the codal provision and is a fatal flaw. Therefore, this is not a valid notarial testament in Louisiana. For this reason, we reverse the trial court's judgment and find Bunny's testament is invalid.

Because we agree with Patrick's Succession that Louisiana law applies and this testament is invalid on its face, we do not reach the remaining issues.

**CONCLUSION**

For the reasons stated above, we reverse the trial court's ruling and hold that the lack of Bunny Neal's signature on each page renders Bunny Neal's testament invalid. Costs associated with this appeal are cast on the Appellees.

**REVERSED.**